# THE SAN FRANCISCO AND SAN JOSE RAILROAD COMPANY *v.* DAVID MAHONEY AND JAMES G. DENNISTON *et als.*

APPEAL IN PROCEEDING TO CONDEMN LANDS.—An appeal lies from a judgment in a proceeding to condemn lands to the use of a corporation, and from an order granting or refusing a new trial after judgment in such proceeding.

TIME OF ASSESSING VALUE OF LAND CONDEMNED.—In a proceeding to condemn land for the use of a railroad corporation, the owner is entitled to receive the value of his land as assessed at the time when, in the language of the Constitution, the land is "taken." This time is not when the plat of survey is filed with the Secretary of State, nor when the company enters for the purpose of construction.

POWER OF COMMISSIONERS APPOINTED TO APPRAISE LAND.—Commissioners appointed to appraise land to be taken for the use of a railroad company have no power to pass upon any question of title, or to make any apportionment of the money assessed for the value among the owners.

WHEN TITLE TO LAND CONDEMNED FOR RAILROAD IS CONTINGENT.—If the title of the claimants to land over which a railroad passes is dependent on a confirmation of a survey of a Mexican grant by the United States, the location of which may be changed, the money for the assessed value of the land should be paid into Court and remain there until the title is settled.

PERSONS ENTITLED TO COMPENSATION FOR LAND CONDEMNED FOR PUBLIC USE.—Parties claiming compensation for value of land condemned for railroad purposes must be owners of the land taken, or have an interest therein.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

Plaintiff appealed from the judgment and from an order denying a new trial.

The other facts are stated in the opinion of the Court.

*Charles N. Fox*, for Appellant.

The fair market value, at the time of the taking, should be the measure of damages. (Pierce on American Railways, 203.) And this, according to the same author, is to be reduced by resulting benefits, or not, according to the provisions of the local statute under which the award is made.

The case of *Bensley* v. *Mountain Lake Co.*, 13 Cal. 306, relied upon by the defendants upon this proposition, is not in point. That is a case where the award had been made and decree entered, and the award remained unpaid for four years, at the expiration of which time the plaintiff in that proceeding

sought to take possession and pay only the amount awarded four years before. The Court very properly said that the award should have been paid before, and since it was not, the increased value should be paid.

What is " the time of taking ? " Defendants say that it is the time of making the award or payment; and it is upon this that they base their claim to recover the present value of the land. In this we think they are wrong. The statute, as amended, (Stat. 1863, p. 614, Sec. 34,) especially provides for the taking of the land at the time of the commencement of the proceedings. These proceedings may be delayed, without any fault of plaintiff, for years ; and if defendant's theory is correct, the longer he could delay them, the more he would gain by it, thus permitting him to take advantage of his own wrong.

In this State, a railroad company is required to file a plat of the location of its road with the Secretary of State, and in the office of the Clerk of the county. (Stat. 1861, p. 623, Sec. 42.) In Massachusetts, this plat has to be filed with the County Commissioners, and the filing of the plat is held to be the " taking of the land." (*Charleston Br. R. R. Co.* v. *County Commissioners*, 7 Met. 78 ; *Boynton* v. *Peterborough and Shirley R. R. Co.*, 4 Cush. 467 ; *Boston and Providence R. R. Co.* v. *Midland R. R. Co.* 1 Gray, 361 ; *Haven* v. *Boston and Maine R. R. Co.* 2 Gray, 575.) The same rule should apply here ; but in this case we have been more liberal, and conceded that the taking was in point of time identical with actual entry upon the land for the purposes of construction.

This Court has already decided that in these proceedings the Commissioners have nothing to do with the question of ownership in the land, and no power to determine who shall receive the award. (*Spring Valley Waterworks* v. *San Francisco et al.*, 22 Cal. 434.) In this case, though there was no evidence upon the subject, the Commissioners have passed upon that question and distributed their award.

15

*Sharp & Tompkins,* and *T. I. Bergen,* for Respondents.

The award of the Commissioners is a statute award, and like all awards can only be vacated for errors of law or fact appearing upon its face, or corruption, irregularity, or unfairness in the procurement thereof. (*Carsley* v. *Lindsay,* 14 Cal. 390 ; *Tyson* v. *Wells,* 2 Cal. 122 ; *Muldrow* v. *Norris,* 2 Cal. 74.) The opinion of the Commissioners upon the questions of title, capacity in which the land is held, or proportions in which it is to be awarded, is harmless. The maxim is *utile per inutile non vitiatur.* In the case of *Fulton* v. *Hanlon,* 20 Cal. 483, Mr. Chief Justice Field correctly lays down the rule of law applicable in such cases. The consideration of the character of the title was foreign to the case, and entirely unnecessary for its disposition; and as a consequence, any declaration in the decree as to that title was without any binding force as an adjudication, either upon parties, privies, or anybody else. (*Hotchkiss* v. *Michaels,* 3 Day, 138 ; *Coit* v. *Tracy,* 8 Conn. 268.) The legal operation, therefore, of the decree as an adjudication between the parties, is precisely the same which would have followed had it simply denied the injunction and dismissed the suit for want of equity in the complaint. It establishes the fact that the matters alleged were not sufficient for the exercise of the jurisdiction of a Court of equity. It determines nothing as to the truth or falsity of these matters, or as to the rights of the parties upon them, when they are presented in a Court of law. (*Lessee of Wright* v. *Deklyne,* Ret. C. C. 198 ; *Banks* v. *Adams,* 23 Me. 259 ; *Pope* v. *Brett,* 2 Sand. 293.)

The grant confers on the claimant the right of the quiet possession and enjoyment of all the land embraced within the exterior boundaries until segregation is made thereof, (*Thornton* v. *Mahoney,* 24 Cal. 569,) of which he cannot be deprived without just compensation. (*McCauley* v. *Weller,* 12 Cal. 500; *Gunter* v. *Geary,* 1 Cal. 465 ; *Johnson* v. *Alameda County,* 14 Cal. 106 ; *Sacramento Valley Railroad* v. *Moffat,* 6 Cal. 74; *McCann* v. *Sierra County,* 7 Cal. 121 ; *Sacramento Valley Rail-*

*road* v. *Moffat*, 7 Cal. 578 ; *Northern Railroad* v. *Gould*, 21 Cal. 254.)

Furthermore, proceedings to condemn are not had for the mere purpose of divesting any particular estate in the land, or the interest of an individual therein.    The proceedings are *in rem*, operate upon the thing itself, and are intended, when regularly pursued, to effect a complete transfer of the thing and the interest of all persons whomsoever therein.

By the Court, Shafter, J.

The objection made by the respondent that no appeal lies from the judgment in a proceeding to condemn lands to the use of a corporation, or from an order granting or refusing a new trial, is not well taken.    The point was passed upon directly in *Sacramento, Placer and Nevada Railroad Company* v. *Harlan*, 24 Cal. 334.

It is suggested, rather than urged, that the doctrine of that case is irreconcilable with *Dorsey* v. *Barry*, 24 Cal. 449 ; but the distinction between the two cases is apparent.    The Act regulating the trial of contested elections not only provides a special mode or method of trial, but one which we considered as " complete in itself, leaving little, if anything, dependent upon implication or the common law powers of the Court." There is no break in the special procedure applicable to that class of cases which the general Practice Act can be drawn upon to fill.    It will be observed that the reasoning in *Dorsey* v. *Barry* does not go so much upon the quality of the proceedings, as being special or contrary to the course of the common law, as it does upon the ground of the perfectness of the procedure in the given instance—subjecting the question of construction, with which the Court was dealing, to the maxim of *expressum facit cessare tacitum*, in its broadest or most exhaustive application.

It is insisted on the part of the appellant that the " Commissioners erred in allowing the sum of four hundred dollars per acre for the land appropriated, as the evidence shows that

at the time of the appropriation the same was not worth more than one hundred dollars per acre."

*Time when the value of land taken for railroad purposes is to be appraised.*

One of the points raised in argument under this specification, relates to the time with reference to which the value of land taken for public use is to be assessed.

There can be no doubt that the land owner is entitled to receive a sum equal to the value of his land at the time when, in the language of the Constitution, the land is "taken" (Pierce on Am. Railways, 203)—subject to the allowance provided for by section thirty of the Act of 1861. It is claimed by the appellant that the taking of the land was accomplished in this case when the plat of the location of the road was filed with the Secretary of State and in the office of the Clerk of the County, under the forty-third section of the Act referred to ; or at least, that the taking was in point of time, identical with the actual entry upon the land for the purposes of construction ; while it is claimed, on the part of the respondent, that land cannot be said to have been appropriated or taken for public use until the compensation assessed by the Commissioners shall have been paid or tendered.

It is not necessary to a disposal of this appeal on its merits to pass directly upon the correctness of the view taken for the respondent ; and assuming the respondent's position to be erroneous, it is also unnecessary to determine which of the two alternative views submitted by the appellant is the correct one.

The map referred to in the forty-third section of the Act of 1861 is to be filed, not before the lands have been taken, as the appellant seems to assume, but thereafter. The provision is as follows : "Every railroad company in this State shall, within a reasonable time after their road shall be finally located, cause to be made a map of the land taken and obtained for the use thereof, and the boundaries of the several counties through which said road may run, and file the same in the

office of the Secretary of State," etc.   The taking here spoken of is such an appropriation of the property as deprives the owner of his title (*Cushman* v. *Smith*, 34 Me. 247); and according to the provision, the filing of the map and the taking or appropriation of the land are neither identical nor contemporaneous.   The only relation into which the two events are brought by the section is that the " taking " or " obtaining " of the land is to be consummated before the filing of the map. An event that is to be fully perfected in advance of another event cannot be said to be dependent upon it.

That the Legislature, even if it had the power so to do, did not intend that the acquisition of the title and right of entry should depend at all upon the filing of a map in the public offices named, is further apparent from the thirty-fifth section of the Act in question ; which provides that " upon the report of the Commissioners being filed for record, as above provided for, and upon the payment or tender of the compensation and costs, as prescribed in this Act, the real estate, or the right, title or interest therein described in such report, shall be, and become the property of said company for the purposes of its incorporation, and shall be deemed to be acquired for, and appropriated to, public use."   The payment, or tender, of the money awarded, is a condition precedent to the right of the company to enter upon the land for the purposes of construction ; and without compliance with the requirement such entry may be enjoined by a Court of equity, or prosecuted for in trespass at law.   (*Gunter* v. *Geary*, 1 Cal. 65 ; *City of San Francisco* v. *Scott*, 4 Cal. 116 ; *Sacramento V. R. R. Co.* v. *Moffat*, 6 Cal. 75 ; *McCann* v. *Sierra Co.*, 7 Cal. 124 ; *Mc-Cauley* v. *Weller*, 12 Cal. 528 ; *Bensley* v. *Mt. Lake Water Co.*, 13 Cal. 313 ; *Johnson* v. *Alameda Co.*, 14 Cal. 107 ; *People* v. *Brooks*, 16 Cal. 47.)

As to the other position taken for the appellants, that the value of the land is to be computed as of the date when the appellant entered for the purposes of construction, we consider it to be untenable.   A lawful entry must be preceded by a right of entry ; and that must be preceded by payment

or tender of the compensation previously assessed. To say that the Commissioners are to determine the value of the land with reference to the time when the party enters for the purposes of construction, is to say not only that the Commissioners are to be put upon the anomalous service of finding out, not what is or what has been, but of assessing the value of land with reference to a point of time when it must have ceased to be the property of the party in whose favor the assessment is made, and have become the property of the party in whose favor it has been condemned. Counsel have referred to no provision of the statute sustaining this position, nor to any adjudged case; and we consider the objections to it as insuperable. The time with reference to which the damages were in fact computed in this case does not appear, and we cannot presume that the Commissioners erred in that particular.

As to the amount of the damages, there is nothing in the record that would authorize us in going behind the finding of the Commissioners.

*Power of Commissioners who appraise land taken for railroad purposes.*

It is found by the Commissoners that David Mahoney is in possession of the land; that James G. Denniston claims to be the owner of one undivided seventh, and that the claim is conceded by Mahoney; and that he holds the possession for the benefit of Denniston to the extent of one-seventh undivided. The report awards eleven thousand and eighty-eight dollars as the value of the land condemned—nine thousand five hundred and four dollars to Mahoney and one thousand five hundred and eighty-four dollars to Denniston. This apportionment of the compensation was confirmed by the Court.

The Commissioners had no power to make the apportionment, nor to pass in any manner upon the question of title; and to that extent the judgment is erroneous. (*Spring Valley Waterworks* v. *San Francisco et al.*, 22 Cal. 434.)

It appears by the stipulation of parties that the land which the railroad crosses is held by the defendants, Denniston and

Mahoney, under a Mexican grant of half a league, within external boundaries embracing a much larger quantity.   The grant has been confirmed, a survey has been made and an appeal has been taken therefrom, which appeal has not as yet been decided.

Until the final segregation of the half league it cannot be known whether the parties claiming under the grant, defendants in the proceeding, are entitled to the assessed value or not.   By the Constitution compensation is to be made to the parties owning or interested in the property taken, and the Act of 1861 follows out this conception,   Should the road not cross the defendant's half league, as finally located, it is apparent that no property of theirs will have been taken by the company for public use, and in that event they can have no rightful claim to its value.   The case is substantially the one provided for in the thirty-sixth section of the Act of 1861, and in the thirtieth section, as amended by the seventh section of the Railroad Act of 1863.   The claim of the defendants to compensation is contingent, and not absolute, and, therefore, no absolute award of it to them can be made, as yet.

The money should be paid into Court and remain there until the final segregation of the half league claimed by the two defendants named, shall have been made by the proper authority; at which time, if it shall appear to the Court that the lands sought to be condemned are within the survey of the half league, and that Mahoney and Denniston are the owners thereof, then the money should be paid to them according to their respective rights.

The judgment, in so far as it relates to the value of the land at which the proceedings are directed, is affirmed, and as to the residue the judgment is reversed, and the cause is remanded for further proceedings.