## FRANK RABB v. LA FERIA MUTUAL CANAL COMPANY.

Decided June 27, 1910.

**1.—Condemnation—Inability to Agree—Allegation.**

An allegation by a condemnor in its statements filed with the county judge asking for the appointment of commissioners for a condemnation proceeding, that the condemnor and the owner of the land had been unable to agree on the amount of the damages, is sufficient to authorize the county judge to act.

**2.—Same—Jurisdiction—Facts.**

In condemnation proceedings neither the county judge, upon the filing with him of the statement by the condemnor, nor the commissioners, upon the hearing with regard to the damages, can inquire into the truth of the facts upon which the jurisdiction is invoked; this can not be done until the hearing in the County Court on appeal from the award of the commissioners.

**3.—Same—Conflicting Claimants.**

It seems that where there are several contending claimants to land and to the damages which would result from constructing a canal across the same, it being improbable that the claimants would agree that the damages, even if the amount was agreed upon, might be paid to any one of them, the condemnor would be relieved in such case of the necessity of alleging that it had been unable to agree with the owner of the land upon the amount of the damages. The condemnor could not be required to take the risk of deciding between the claimants and of paying the damages to any one of them.

**4.—Same—Pendency of Trespass to Try Title.**

The fact that a suit of trespass to try title is pending against a public service corporation, and that in said suit said corporation could have a right of way condemned (which was all the corporation desired) for a quasi public purpose over the land in controversy, is no sufficient reason why such defendant corporation should not inaugurate and prosecute a condemnation proceeding for said right of way pending the suit.

**5.—Same—Right of Way—Width—Statute.**

The limitation of 100 feet for right of way for irrigating canals, as prescribed in art. 3126, Rev. Stats., has application to public lands only.

**6.—Same—Award—Conflicting Claimants—Apportionment.**

The general rule that each of several owners of land sought to be condemned is entitled to have the amount of damages due him separately awarded

to him, has no application when the defendants in the condemnation proceeding are adverse claimants of the same land and each claims the whole amount of the award that might be made. In such case an award of a lump sum and the deposit of the money as required by law is sufficient.

### 7.—Same—Parties Defendant.

Where there are adverse claimants to land sought to be condemned for right of way purposes by a public service corporation, the condemnor may make all the adverse claimants parties defendant, and so bind them all by one proceeding and one award, and, after deposit of the money as required by law, it may take possession of the land and proceed with the work.

### 8.—Same—Cases Followed and Distinguished.

Davidson v. Texas & N. O. Ry. Co., 29 Texas Civ. App., 57-59, followed; City of Paris v. Tucker, 101 Texas, 100, distinguished.

### 9.—Same—Injunction—Dissolution.

In a suit of trespass to try title, in which a canal company was a defendant, said company was enjoined from entering upon the land claimed by plaintiff and from constructing an irrigating canal thereon; the company then inaugurated and prosecuted to award condemnation proceedings for a right of way across said land. Held, upon pleading this fact and compliance with the award, the District Court properly dissolved the injunction, although an appeal from the award was pending.

### 10.—Injunction—Confession and Avoidance—Dissolution.

Where, subsequent to the granting of a temporary injunction to restrain a trespass upon land, the defendant by condemnation proceedings has acquired the right to enter, the injunction is properly dissolved, and this though the answer setting up the condemnation is a plea in confession and avoidance.

Appeal from the District Court of Cameron County. Tried below before Hon. W. B. Hopkins.

*James B. Wells* and *F. W. Seabury,* for appellant.—The condemnation proceedings were void by reason of the absence of an essential jurisdictional fact, namely, that the condemning corporation and the land owner had been unable to agree on the damages. Rev. Stats., 1895, art. 4447; Barnes v. Chicago, R. I. & T. Ry. Co., 33 S. W., 601; Porter v. City of Abilene, 16 S. W., 107; Railway v. Mud Creek Co., 1 Texas Civ. App., secs. 393, 394; Lewis on Eminent Domain, secs. 497, 500, 594; 15 Cyc., 821, 822, 853; 7 Ency. Pl. & Pr., 529-530; Cooley's Const. Lim., 528 (original paging).

The condemnation proceedings were void by reason of the prior institution and pendency of this suit, whereby the jurisdiction of the District Court attached to the lands in controversy herein and the claims thereto of the parties to this suit; and condemnation of same by any other tribunal was thereby barred. Freeman v. Alderson, 119 U. S., 187-190; Townes on Texas Pleading, 39-40, 45.

The condemnation proceedings were void because the land taken thereby by the Canal Company was in excess of the width permitted by law for right of way for its canal. Rev. Stats., art. 3126; Lewis on Eminent Domain, secs. 388, 453.

The condemnation proceedings were void because the statement for

condemnation did not name the owners of the lands sought to be condemned, and, by reason of the failure so to do, jurisdiction to condemn was not acquired. Rev. Stats., arts. 4446, 4447, 4455; Porter v. City of Abilene, 16 S. W., 107; Railway v. Mud Creek Co., 1 Texas Civ. App., sec. 397; Lewis on Eminent Domain, secs. 548, 555; Mills on Eminent Domain, sec. 77; 15 Cyc., 896-897.

The award of the commissioners of condemnation was void by reason of their failure therein to apportion the damages among the several defendants entitled thereto. City of Paris v. Tucker, 101 Texas, 100, 101; Lewis on Eminent Domain, secs. 766, 767; 15 Cyc., 890, 892, 896, 898; 7 Ency. Pl. & Pr., 601.

The deposit by the Canal Company of the damages awarded by the commissioners of condemnation was made in the gross sum of the award, subject to the order of the defendants jointly, and was not so deposited that any land owner, satisfied with the award, could get his part, and was not such a deposit as required by the Constitution and laws of this State to be made before land can be taken by exercise of the eminent domain. Constitution of Texas, art. 1, sec. 17; Acts 1899, 105; Sayles' Ann. Stats. Supp., art. 4471; City of Paris v. Tucker, 101 Texas, 99; Hopkins v. Cravey, 85 Texas, 191-192; Crary v. Port Arthur Channel & Dock Co., 45 S. W., 842.

*Kibbe & Holland, Noah Allen* and *R. B. Creager,* for appellee.

REESE, ASSOCIATE JUSTICE.—This is an appeal from an order dissolving, in part, a temporary injunction. The temporary injunction was granted, upon the application of appellant, enjoining appellee from trespassing upon land claimed by appellant, and was issued in connection with an action in trespass to try title instituted by appellant as plaintiff, against appellee, the La Feria Land & Irrigation Company and others.

The land involved in this suit is a tract in the shape of a triangle 470.5 feet wide at the north end and about fourteen miles long, running to a point at a base line on the Rio Grande river. Appellant and the La Feria Land & Irrigation Company own two adjoining tracts of land fronting on the Rio Grande and running thence north, one of them fourteen miles and the other eighteen miles. The dispute out of which grows this litigation arises out of a controversy as to the location of the division line starting from a known and undisputed point on the common base line of the two tracts on the Rio Grande river. Other parties to this suit claim portions of this land under conveyances from the La Feria Land & Irrigation Company.

The Canal Company was organized in September, 1908, as an irrigation company, under the statute, by the stockholders of the La Feria Land & Irrigation Company and other land owners, to irrigate their respective lands, each granting to the Canal Company rights of way for a canal over their respective lands at an agreed compensation of $75 per acre. The company began the construction of its canal on the land

in controversy in July or August, 1909, under grant of right of way from the La Feria Land & Irrigation Company, which claimed to be the owner of the land, the title of which is also claimed by appellant Rabb. In August, 1909, appellant first learned that the canal was being constructed on the land, and employed a surveyor to ascertain the true location of the division line between his land and the tract of the Irrigation Company, and, negotiations for a settlement with the two companies having failed, he instituted said suit on November 6, 1909, and obtained a temporary injunction as aforesaid.

On January 8, 1910, the Canal Company instituted proceedings under the statute for condemnation of land for a right of way for its canal over the said tract of land. These proceedings were instituted against appellant Rabb, who claimed to own the entire strip except three acres belonging to or claimed by one Prajedis Garza, the said Garza, the widow and executors of Bedell Moore, who held a mortgage on all of appellant's lands, and the La Feria Canal & Irrigation Company. The statement made to the county judge in initiating these proceedings, contained the allegation that these parties "own and claim to own, hold, have and claim to have some right, title and interest in and to the lands sought to be condemned." Commissioners were appointed by the county judge and duly qualified. A hearing was had at which all the parties appeared and were heard, appellant protesting against the legal competency of the commissioners and saving his right to object to the proceedings in the proper courts. The commissioners made the following award:

"And we do hereby assess the damages due to La Feria Land & Irrigation Company, Frank Rabb, estate of G. Bedell Moore, Prajedis Garza and Mrs. Elizabeth B. Moore, as owners of said land, by said La Feria Mutual Canal Company, as follows, towit:

"For first tract, containing 5.9 acres, the sum of three hundred and fifty-four ($354) dollars.

"For second tract, containing 54 acres, the sum of one thousand eight hundred and ninety ($1890) dollars.

"For third tract, containing 15.9 acres, the sum of three hundred and ninety-seven and 50/100 ($397.50) dollars.

"As special damages accruing to the owner or owners of that part of said third tract, occupied by Prajedis Garza and being the improved part thereof, the sum of four hundred ($400) dollars, making a total of three thousand and forty-one and 50/100 ($3041.50) dollars hereby awarded against said La Feria Mutual Canal Company."

All the defendants in that proceeding, except the Irrigation Company, filed their opposition to the report, and the proceeding as to them is pending on appeal in the County Court. After the award was made, the Canal Company deposited the amount of the award with an equal additional sum with the county clerk, filed the bond required by the Act of 1899, and paid the cost of the proceeding, and afterwards filed in the District Court its amended answer, not under oath, wherein it denied specifically each of the material allegations of the petition, and

setting out the condemnation proceedings aforesaid, and moved the court to dissolve the temporary injunction previously granted as to it. To this appellant replied by supplemental petition attacking on various grounds, which will be hereafter referred to, the condemnation proceedings. The district judge, upon the hearing of the motion, entered an order respecting the said condemnation proceedings that the same were in all things regular and legal and entitled the Canal Company to take possession of the land so condemned, and dissolving the temporary injunction as to said lands, fully identifying and describing the same. From this order this appeal is prosecuted.

The assignments of error challenge the validity of the condemnation proceedings on various grounds. The first ground of objection is that the proceedings were void by reason of the absence of the fact, which is claimed to be jurisdictional, that the condemnor and the land owner had been unable to agree on the damages. This fact was properly alleged in the statement filed with the county judge asking for the appointment of commissioners. This was sufficient to authorize him to act. (Arts. 4447-8, Rev. Stats.)

It is correctly stated in the brief of appellant that, under the statute, neither the county judge, upon the filing of the statement with him, nor the commissioners, upon the hearing with regard to the damages, can inquire into the truth of the facts upon which this jurisdiction is invoked, but that this can not be done until the hearing in the County Court of the appeal from the award of the commissioners. This appeal is now pending and is yet to be heard, so that up to the time the motion to dissolve the injunction was heard in the District Court, the condemnation proceedings were, as found by the district judge, in all respects legal and regular.

Further, it was stated in the supplemental petition of appellant that after the surveyor had reported to him the true facts about the location of the division line referred to, he spent three weeks negotiating a settlement with the Canal Company and the Irrigation Company through purchase of his land taken by them both, which were fruitless. What were these negotiations about, so far as the Canal Company was concerned? It only wanted a right of way, and it must be presumed that the negotiations with it were for the acquisition of this right. The negotiations, as appellant alleges, failed. It seems to us that with these two parties both claiming this strip of land and whatever damages there might accrue from the opening of the canal, on the face of it, it was impossible for the Canal Company to agree as to the amount of damages due appellant, unless it accepted him as the owner and paid him full damages, taking the risk of having to pay the Irrigation Company also in the event the land was adjudged, in this suit, to belong to it. This it could not be required to do. It seems to us that it would be trifling with the rights of appellee, and that it would serve no purpose except delay to send it back now to make an attempt, in which it would necessarily fail, to agree with appellant as to the amount of damages to

be paid him, if in fact it did not appear, which we think is shown *prima facie,* that such attempt has been made and failed. This objection to the proceeding can not be sustained.

It was also objected that the condemnation proceedings were void because of the pendency of this suit whereby the jurisdiction of the District Court attached to the land in controversy, in which the land could be condemned for the use of the Canal Company. It is true that in this suit the District Court had authority to condemn the land and award the damages (art. 4472, Rev. Stats.), but necessarily this could not be done until a final determination of the question of title as between appellant and the Irrigation Company. Appellee could not be required to wait until this was done, but might resort to the proceeding under the statute, as it did do, in order to have an immediate condemnation. Otherwise it might have to wait for years before it could proceed with the prosecution of this quasi public work. The purpose of the statute in allowing the condemnor to take possession pending appeal from the award by the commissioners upon certain conditions insuring the eventual payment of the damages, was to avoid this delay.

It is also objected that the right of way condemned was 200 feet wide, while it is contended that the statute limited it to 100 feet. Appellant arrives at this conclusion by construction of the provision of the statute giving a right of way not exceeding in width 100 feet over public lands. (Art. 3126, Rev. Stats.) There is no merit in this contention.

Nor is there any merit in the contention that the statement filed with the county judge did not name the owners of the lands sought to be condemned. We have heretofore set out the allegations of this statement in this particular.

The most serious attack made upon the validity of the condemnation proceedings, as authority for appellee to enter upon the land condemned, is based upon the failure of the commissioners to apportion the sum awarded as damages among the several persons who are alleged to own, and claim to own, some interest in the land sought to be condemned. The award has been heretofore set out in full. This objection on the part of appellant is very ably presented by counsel for appellant in their brief. There is no doubt that the general principle is that each of several owners of land sought to be condemned is entitled to have the amount of damages due him separately awarded to him, and we take it that the citations from text books in the brief only go to this extent. The question which presents some difficulty is, whether this principle applies to a case like the present, where it is, on the face of the proceedings, impossible to do so. If it does, then it appears to us that it necessarily follows that it is impossible legally to condemn this land for the purpose of this canal until by the judgment of the District Court in this suit the respective rights of the adverse claimants of the land have been finally determined. Not until then is it possible to apportion the damages Of course, this argument of *ab inconvenienti* must give way to the positive provisions of the law, if in conflict therewith. We can not

better express our views upon this question than by a liberal quotation from the very able opinion delivered by Associate Justice Gill of this court in the case of Davidson v. Texas & N. O. Ry. Co. (29 Texas Civ. App., 57-9):

"But under the first proposition the validity of the proceedings is assailed on the ground that the railway company instead of ascertaining the true owner and making him alone the defendant, made several alleged claimants defendants, thus precipitating the appellant into litigation and driving him to another suit for the determination of his right to the fund, and that the deposit in satisfaction of the award and to secure the right to immediate possession was not made to the order of this appellant but to the joint order of the defendants. Appellant also complains that the County Court having no jurisdiction to settle the question of ownership to land, he must go into the District Court to vindicate his rights, and therefore his property has been taken without compensation first made or deposited for his benefit.

"We understand from the averments that the deposit was made in compliance with the statute and subject to the order of the court for the benefit of the actual owner when ascertained. It should be borne in mind that the only purpose of the proceeding, so far as the railroad company is concerned, is to secure by condemnation an easement for right of way over the land sought to be appropriated. If an agreement can not be had with the owner, this can be accomplished only by a strict compliance with the provision of the statute regulating the proceedings.

"With the question of title the plaintiff in the case has nothing to do, for by the institution of the suit it is conceded that the title is not in the company, but in the owner or owners made defendants, as their interest may be disclosed as between themselves. (Galveston Railway v. Mud Creek I. A. and M. Co., 1 W. & W., p. 169, and authorities cited.) In one sense the company must designate the owner at its peril, but not in the sense contended for by appellant. That is to say, all persons must be made parties defendants whose interests it is necessary to preclude by the judgment. Else if the company failed to make the true owner a party it might be compelled at the suit of the true owner again to make compensation for the damage done.

"For this reason the company may join as defendants all claimants to the property sought to be condemned, not for the purpose of determining the question of title arising among themselves (for that question must necessarily arise sooner or later independent of the act of the railway company), but in order to give all claimants of an interest in the property an opportunity to be heard on the issues of the right to condemn and the amount of damages to be awarded. (San Francisco & San J. Ry. v. Mahoney, 29 Cal., 112; Lewis on Em. Dom., sec. 616; Board of Cmrs. of Smith Co. v. Labore, 37 Kan., 460; Bentonville v. Stroud, 45 Ark., 279; Haswell v. Vermont Cent. Ry., 23 Vt., 228. This was the practice in Northern Pac. Ry. v. Jackman, 50 N. W., 123, and Grady v. Northwestern Loan Co., 67 N. W., 34.)

"While the tribunal upon which is imposed by law jurisdiction to determine proceedings of this nature is special, the trial is governed by the ordinary rules of law controlling the trial of causes. In many States the right to make opposing claimants parties is conferred by statute. But it seems to us this right exists in the absence of special provision and is a necessary incident to the right to condemn, for it would be idle to confer the power to condemn and at the same time so restrict the right as to deny the railway company a judgment which would protect its possession and protect it against a double recovery, and our statutes governing the proceeding, when the object to be accomplished is considered, are fairly susceptible of the construction we have placed upon them. If the rule were otherwise, the construction of vast enterprises in which the public have an interest might be indefinitely arrested. Situations would arise in which the company could not move in condemnation until opposing claimants were pleased to put their claims to the test by litigation between themselves.

"The soundness of and necessity for this rule seems to have been incidentally recognized by our Legislature, for, among other provisions governing condemnation proceedings, a railway company is authorized to proceed against unknown owners, nonresident owners and legal representatives of the estates of decedents. Rev. Stats., arts. 4454, 4455. If the owners are unknown, the extent of their interests must also be unknown, and when afterwards they appear to claim the funds, their respective interests must be determined in some tribunal of competent jurisdiction. Where the heirs of a decedent are the only legal representatives, questions as to the extent of their respective interests must necessarily arise. It is apparent that the purpose of the Legislature was to allow the company to proceed without reference to these conflicting claims.

"While there is a vast amount of judicial decision upon the questions arising out of proceedings to condemn, and while those upon the right of the plaintiff in condemnation to take possession on deposit of money into court before final determination, are in hopeless conflict and confusion, they are in practical accord upon the question under discussion.

"It is unnecessary for us to concern ourselves with the question of the power of the County Court to determine conflicting claims depending upon the question of title. If that court has not such power, the matter can be determined in the District Court by a proceeding properly instituted, and by an appropriate writ the fund deposited can be held in the registry of the court until the true owners are judicially ascertained and the extent of the various interests adjusted.

"The fact that the payment of the fund to the true owner may be thus delayed does not affect the question of compensation before taking, for the taking after all is against the true owners or parties in interest. The fact that the fund becomes involved in litigation is not the fault of the railway company. It has discharged the burden imposed by law when it establishes its right to condemn, gives the true owner an oppor-

tunity to be heard on that issue and the issue as to the amount of compensation, and complies with the law governing the deposit of funds in court.

"The owner has no right to complain that rival claimants are made parties. The company pays the costs, and if in order to render the judgment conclusive it sees fit to give them the right to be heard, it should be permitted to do so."

The doctrine announced is peculiarly applicable here. The respective rights of the parties to the sum awarded can not be determined until final adjudication of the issue of title in this case. The fund in the hands of the county clerk can be kept there, affording the parties in interest absolute security for the eventual payment of the compensation to which they may be respectively entitled, thus satisfying the requirements of the Constitution and the statute, and upon the determination of this question, either in this case or in another proceeding, the money may be properly apportioned. Upon this question we would not need to do more than to refer to this case as decisive, but for appellant's contention that the opinion is in conflict with the later opinion of the Supreme Court in City of Paris v. Tucker (101 Texas, 100-101). If there is such conflict, then clearly it is the duty of this court to follow, without question, the latter decision. That portion of the opinion of the Supreme Court relied upon by appellant is as follows:

"But we think we must reverse the judgment upon another assignment of appellant in the Court of Civil Appeals. Tucker assigned in that court that he had never been paid or tendered the award for the land. He and his children were made parties defendant in the condemnation proceedings and the value of the land and damages was assessed at $100 as a whole. There was no finding to show how much of this sum he was individually entitled to. The money was placed in bank and the parties notified that it was there subject to their order. He sent his attorney to collect the money and the bank refused to pay it to the attorney unless he would give a receipt for all the parties. This the attorney declined to do, because he had no right to sign for any one except defendant in error. We think the award should have determined separately the amount to which each party was entitled, so that each one could be paid his part. If all had seen proper to sign for the money the award may have been good; but we fail to see how an award of a lump sum to several defendants can be a compliance with the law, when each one is entitled to his individual damage assessed. The city did not pay, because all the award was not receipted for; and the defendant in error did not receive his for the reason that he did not know what proportion of the fund belonged to him and therefore could not receipt for it. Until the latter fact is determined we can not see how it can be said that the money was tendered him. Since the award in this case was incapable of enforcement and since no money has been paid or tendered we think the title to the land did not pass by the proceeding

and that therefore the judgment should be reversed and the cause remanded."

The language thus used must be construed in the light of the question before the court, to be determined by the facts of the case decided.

The facts of that case do not appear in the report of either the Court of Civil Appeals (104 S. W., 1046), nor in the Supreme Court, but examination of the record shows that the land sought to be condemned belonged in fee to the children of Tucker, subject to a life estate in him. In such case there was no inherent difficulty in estimating the damage done to the life estate of Tucker separate from that done to the remainder in the children, and it was the duty of the commissioners to do so and to make their award accordingly, instead of awarding a lump sum to cover the damages to both. (Lewis Em. Domain, 3d ed., sec. 767.) There were no conflicting interests which presented an absolute impossibility of any separate award to the respective claimants, as in the present case. There appears to us to be nothing in the opinion in the Tucker case, when thus interpreted in the light of the facts of that case, which conflicts with the principles of law announced in the Davidson case, *supra,* which is, from its facts, substantially identical with the present case. Our conclusion is that the contention of appellant on this point should not be sustained.

There is no merit in appellant's contention, as set out in the third and fourth assignments of error, that the deposit of the money awarded was not in accordance with the award. The commissioners awarded a lump sum for each of the three tracts separately and an additional sum of $400 as special damages for that part of the land—three acres—occupied by Garza, the title to which, like the rest of the land, was in dispute. The amount in gross was deposited with the clerk subject to the order of all the parties.

It is contended by the fifth assignment of error that the injunction should not have been dissolved absolutely, but so modified as to be inoperative during the pendency of the appeal in the condemnation proceedings. This is not a matter of substance. As the injunction was dissolved entirely upon the condemnation, which gave the Canal Company the right to enter pending the appeal, if upon the hearing of the appeal the condemnation should be set aside, upon proper application to the district judge the injunction could be reinstated or a new injunction granted. The assignment is overruled.

It is also contended by the sixth assignment of error that the motion to dissolve should have been refused on the ground that the Canal Company had placed itself in contempt by violation of the temporary injunction. The district judge did not take this view of the acts alleged to have constituted such contempt and we can not say that he erred therein. The assignment is overruled.

As the district judge did not dissolve the injunction upon the ground

that appellee had denied, under oath, the material allegations of the petition, appellant's seventh assignment of error is groundless.

The principle that a temporary injunction will not be dissolved, in the absence of a specific denial under oath of the allegations of the bill, merely by reason of matters pleaded in confession and avoidance thereof, which is well established, has no application to a case like the present, where, subsequent to the injunction to restrain the trespass upon land, the defendant, by condemnation proceedings, has acquired the right to enter.

We have examined carefully each of the assignments of error and the several propositions thereunder and are of the opinion that none of them presents sufficient ground for setting aside the order of the district judge dissolving the injunction. The judgment is therefore in all things affirmed.

*Affirmed.*

Writ of error refused.