Paul E. ARMSTRONG et al., Appellants.

v.

CITY OF HOUSTON et al., Appellees.

No. 12702.

Court of Civil Appeals of Texas.
Galveston.

Oct. 21, 1954.

Motions for Rehearing Denied Nov. 18, 1954.

Second Motions for Rehearing Denied
Dec. 9, 1954.

Hamblen & Bobbitt and W. J. Mills, Houston, for appellant.

Will G. Sears, City Atty., and Ernest A. Knipp, Houston, for appellee City of Houston.

Howard S. Hoover and T. B. Blanchard, Houston, for appellee Kansas University Endowment Assn.

Walker F. Johnston, Houston, for appellee Erma Lee Brokaw.

CODY, Justice.

This is a condemnation suit brought by the City of Houston in the County Court at Law of Harris County against appellants and some hundred and seventy-five other defendants. The property sought to be condemned forms a link in State Highway No. 59 and lies in the Collins Tract Addition out of the J. S. Collins Survey. The City alleged in substance that there is such an irreconcilable conflict in the title, boundaries and locations of the various tracts involved that the City could not safely agree with any of the defendants as claimants without being compelled to take the risk of paying twice or more for the same right of way.

The J. S. Collins Survey was patented to his assignee, Charles B. Stewart, on March 1, 1841. The northern boundary of the Survey is 2,430 varas; the western boundary thereof is 1,206 varas. The eastern boundary is 2,956 varas. Stewart conveyed to Darius Gregg what purported to be a tract of 259 acres out of the J. S. Collins Survey, which tract subsequently became the "Collins Tract Addition." The description of this 259 acres began in the northeast corner of the Collins Survey, and runs west 1,364 varas; the next call is what has caused all the trouble. This next call is for 1,365½ varas south. As noted above, the west boundary of the Survey was but 1,206 varas. In other words, the grantor's field notes covered a strip 159½ varas wide in the Samuel Harris Survey, which joins the J. S. Collins Survey on the south. Without tracing the title further, it is sufficient to state that all of the lots and blocks in the Addition have been sold with reference to the plat of said Addition as the same was recorded in the deed records of Harris County on June 14, 1862. A copy of said plat is hereto attached designated as Appendix "A" (plaintiffs' exhibit No. 29).

As designated on the plat, the outside street on the north of the Addition is Adams Street. On the ground, the outside street on the north of the Addition is called Kelley Street. The evidence in the case identifies Adams Street of the plat as practically being Kelley Street on the ground. As designated on the plat, the outside street on the East of the Addition is York Street. The evidence identifies for practical purposes the street which is now called Hirsch with York Street of the plat. Labadie Street is the outside street of the Addition on the south as shown on the plat, and Labadie Street is the name of the outside street on the south of the Addition, as located on the ground. The City represents here that none of the interior streets shown on the plat of the Addition have been laid out on the ground. And it is obvious from the plat that Hunting Bayou, which is a few hundred feet north of Labadie Street, is not shown on the plat. As stated above, the Addition as platted is 259 acres. The Addition as located on the ground is surrounded by other additions which are fully developed. And said Addition as located upon the ground contains only about 217 acres. That is to say, the Addition as located on the ground is some 42 acres less than the Addition as platted. It is, therefore, obvious that the lots and blocks of the Addition, as platted, cannot be fitted into the Addition as located on the ground, so as to give to each lot and block its full dimensions, as platted.

The City in its petition described the land which it sought to have condemned, out of the Collins Tract Addition, as consisting of five tracts. Three of said tracts sought to be condemned were tracts to be used for drainage, and two of the tracts were to be used for the Highway-proper. We have attached hereto a copy of the sketch which shows the five tracts to be condemned, which we have designated Appendix "B" (plaintiffs' exhibit No. 13).

558

TEXAS HIGHWAY DEPARTMENT

SKETCH SHOWING THE COLLINS TRACT. ADDITION OUT
OF THE J.S COLLINS SURVEY ABSTRACT 198 AS' RE-
CORDED IN VOL 2 PG 138 OF THE DEED RECORDS
OF HARRIS COUNTY TEXAS JUNE 14, 1862

OFFICE OF RESIDENT ENGINEER
SCALE 1"=200'

HOUSTON TEXAS
JANUARY 1950

Appendix "C"

McLANE
NECHES
ORANGE
FAIRVIEW
ESTELLE
DORCAS
CRITTENDEN
BEAUREGARD
ADAMS
PAIGE
QUEEN
RICHMOND
STATE
TUCSON
UTAH
VICTOR
WORTH
XENOPHON
YORK

560

Plaintiff Exhibit No. 15

TEXAS HIGHWAY DEPARTMENT
SKETCH SHOWING PROPOSED R-O-W
AND
CHANNEL EASEMENTS
FOR
U.S. HWY. 59 AND NORTH LOOP
ACROSS
COLLINS TRACT ADDITION
HOUSTON, TEXAS
JANUARY 1950

OFFICE OF RES. ENGR.
SCALE 1"= 200'

We are directly concerned here only with the tract designated thereon as "Parcel 'A' (R. O. W.)". Said tract runs from the intersection of Hirsch and Kelley Streets and along the south side of Kelley Street, then in a southerly direction, crossing Hunting Bayou, and which also crosses Labadie Street. But we are here concerned with the tract only so far as it forms a part of said Collins Tract Addition.

As indicated above, the City alleged that it was unable to agree with the owners of the land within the right of way as to the value of the land and the amount of the damages resulting from the taking thereof because it could not determine the real and true owner thereof due to the conflicts in the boundaries affecting the location on the ground. The award of the three special commissioners was not accepted. And in the trial before the court, the court submitted to the jury only issues as to the value of the five tracts of land, and the total value thereof was found by the jury to amount to $217,932.37. The court rendered judgment for all of the defendants jointly for the lump sum of $217,932.37, which was by the City duly deposited in the registry of the court to await the determination of the titles of the parties in the district court so that same could be distributed to those shown to be entitled thereto.

The court found from what it stated to be the uncontradicted evidence the following: "The Court further finds from the uncontradicted evidence that the right of way sought to be acquired is over and across a tract of land commonly known as 'Collins Tract Addition'; that a plat of said purported subdivision was filed of record in the office of the County Clerk of Harris County, Texas in 1862; that an examination of said recorded plat shows that no directions and no actual points of location on the ground are shown on said recorded plat; that the distances and the quantities of land called for by the measurements in the plat exceed the entire width of the survey out of which the subdivision was purportedly made; that none of the internal streets in the subdivision have ever been used as such, nor have they ever had any actual location upon the ground; that the location of the boundary street, or streets around the perimeter of the subdivision, are confused and uncertain; that the pleadings of the defendants herein assert conflicting claims in regard to location and boundaries; that a portion of one street in the area, which was at times called 'Neches Street' and at other times 'Orange Street,' is not so located on the ground that such location can be reconciled with the recorded plat, though the plat shows both of such named streets; and that the uncontradicted evidence shows that the location of the various streets, tracts, lots and blocks are confused and uncertain; that there are various persons apparently claiming by limitation, and various others who are claiming according to the recorded plat above mentioned; and that the City of Houston therefore could not agree with any of the defendants or claimants of any of the property condemned without risking being compelled to pay for the same land twice or more; and that the only award that can be made herein is a lump sum award to all of the defendants jointly. The Court also finds from the evidence that each of the defendants named in the statement in condemnation have been served with due and timely notice in the manner and for the length of time required by law, by personal delivery of such notice, or by citation by publication, and that all jurisdictional requirements have been complied with."

The appellants, the Misses Willis Culmore and Blanche Culmore, alone have appealed, and they predicate their appeal upon twelve points.

We believe no useful purpose would be served to set forth each of the 12 formal points urged by appellants on this appeal.

■ It is true that according to the pleadings and evidence of appellants they were only concerned with Blocks 26 and 46 of the Addition. But it was not error for the court to refuse appellants' motion to sever the proceedings against them from the proceedings against the other

defendants. Appellants' evidence was to the effect that their mother's first husband acquired title to said blocks in 1862, and that by regular steps appellants duly became vested with title thereto at their mother's death. Their evidence further showed that appellants had kept what they believed to be Blocks 26 and 46 enclosed by fences and leased for more than fifty years. Further, that the City had caused a sketch containing the City Pest House Block to be made which discloses not only said Block (27), but also the location of Blocks 26 and 46 with reference thereto. (See copy thereof hereto attached and marked Appendix "C"—defendants' exhibit No. 1).

It is undisputed that if the City Pest House Block is properly located on the ground that Blocks 26 and 46 are also properly located. Appellants' surveyor, Mr. Fones, testified that he had also located the blocks from the center line of Labadie Street, as graded, and that the southwest corner of Block 26 is distant therefrom 273 feet. In that connection Mr. Fones testified that he had found a semblance of Paige Street on the ground between Kennett and Labadie Streets, that Paige Street was there graded and travelled, and that it could not be traced further,—it there entered Highway 59, which was then under construction. Mr. Fones identified a sketch which he testified shows the location of Blocks 26 and 46 with reference to the Highway on the ground. We have attached a copy of such sketch to this opinion marked Appendix "D" (defendants' exhibit No. 15).

Appellants' evidence did not locate Blocks 26 and 46 with reference to either the starting point of the Addition or with reference to Kelley Street. The undisputed evidence showed that the distance between Kelley Street and Labadie Street was some 450 feet less, as located on the ground, than the distance as platted. Again, there was no evidence of how the Pest House Block had been located on the ground,—that is, located from what reference point.

Here appellants have not complained that the court did not sever the proceedings against them from proceedings against defendants, who claimed land located so distantly from the land claimed by appellants that no conflict in title could possibly arise, at least with their immediate neighbors. It is now well settled in this State that the condemning authority, where the evidence shows that there are conflicting claims of ownership to the land sought to be condemned, or a portion thereof, is entitled to go against all such claimants in one proceeding. Davidson v. T. & N. O. Ry. Co., 29 Tex.Civ.App. 54, 67 S.W. 1093; Houston North Shore Railway Co. v. Tyrrell (Comm.App.), 128 Tex. 248, 98 S.W.2d 786, 108 A.L.R. 1508; and Rabb v. La Feria Mutual Canal Co., 62 Tex.Civ. App. 24, 130 S.W. 916, err.ref. Furthermore, it was not necessary for the condemning authority to attempt to agree as to the value of land sought to be condemned with conflicting claimants before instituting condemnation proceedings. Id. Also it is ordinarily proper for the court to award the damages for the land to be condemned in a lump sum, and leave the conflicting claimants to litigate their titles in the district court. Id. And when the conflicting claims have been settled, the County Court can then distribute the lump sum among the owners, according to established rights thereto. Id.

Appellants requested the submission of special issues based upon their theory of the case, and their rights under said theory. That is, appellants requested special issues to determine the value of their land which was condemned, if same was located where their evidence placed blocks 26 and 46; and to determine their damages for consequential or severance damages if said blocks were so located. We have concluded after much consideration that the court should have given the requested special issues. Insofar as the evidence in this case goes we believe that appellants are not concluded from proving in a title contest that blocks 26 and 46 are located as they contend and as they adduced evidence to support their contention.

564

*Appendix "D"*

MAP
SHOWING RIGHT OF WAY OF STATE
HIGHWAY Nº 59 THROUGH BLOCKS
26 AND 46 OF COLLINS ADDITION
TO THE CITY OF HOUSTON AS SURVEYED
IN ACCORDANCE TO A CONCRETE MONUMENT
SET BY THE CITY OF HOUSTON AND LONG
RECOGNIZED AS THE NORTHEAST CORNER
OF BLOCK 27 KNOWN AS THE PESTHOUSE
BLOCK.
Scale 1" = 100' FT
Surveyed for     Miss     Willie Culmore etal, Sept 30, 1952
Office A.C Shinson and Surveying Co.
Per WALLEE Fones Licensed Surveyor
N B: 362     Page 80     Fla 28.2

It is true that there were between 170 and 175 claimants made parties defendant, and if each claimant sought the submission of like special issues, a jury of ordinary men would sink under the task of answering such a plethora of special issues. It is also true that only the claimants of the title to a few surrounding blocks could have had claims which conflicted immediately with the claim of appellants. But

the principal trouble with respect to locating blocks and lots here result from a very serious shortage of land. In advance of the title contest we cannot know how such shortage will be shifted. The claims of ownership to each lot and block could be affected. Certainly the City cannot be required to proceed against the claimants to certain restricted areas in separate proceedings. This because it might have to pay twice for portions of the land which it has condemned. See authorities cited supra.

■ Except as herein expressly allowed, appellants' points are overruled. Under the principle that a party litigant has the right to have the theory of his case, as made out by his pleadings and supported by his evidence, submitted to the jury by appropriate special issues duly requested, we are constrained to reverse the judgment of the court below, and remand the same for a new trial.

Judgment reversed and cause remanded.

HAMBLEN, C. J., not sitting.

On Appellees' Motions for Rehearing.

■ Landowners are of course entitled to recover consequential or severance damages for the injury done to their remaining land by reason of the taking of part of their land. Appendix "D" shows the shape in which lots 26 and 46 are left, by reason of the construction of the highway, if they are located where appellants' evidence has placed them. In addition to appellants' evidence, cited in our original opinion, which undertook to locate lots 26 and 46 as shown on Appendix "D", and on Appendix "C", the testimony of appellee Mrs. Brokaw professed to locate her lot 28 just above the City Pest House Block, as located on the ground. See Appendix "C". Her testimony also located lot 26 where the evidence of appellants located same. This would also necessarily locate lot 46 where appellants' evidence locates same.

In this case the evidence as to the doubtfulness of the ownership of the respective lots of land arises out of the doubtfulness as to the location of lots. The City had the right to bring its action against all the defendants because it ought not to have to pay double damages. However the right of the appellants to recover their full complement of damages, if lots 26 and 46 are located where their evidence positively places them, is fully as sacred as the right of the City not to pay double damages, if the locations of said lots are as uncertain as the City's evidence makes same out to be.

We overrule appellees' motions for rehearing.

HAMBLEN, C. J., not sitting.