HOUSTON NORTH SHORE RAILWAY COMPANY ET AL.
v. H. C. TYRRELL, TRUSTEE, ET AL.

No. 7082.   Decided November 12, 1936.
(98 S. W., 2d Series, 786.)

*Andrews, Kelley, Kurth & Campbell, Robert H. Kelley,* and *James E. Kilday,* all of Houston, for appellants.

A public utility, under its power of eminent domain, having

possession of property by virtue of an interest or estate which is limited or qualified does not bar it from exercising its right of condemnation of an unqualified easement over such property while the possession continues. Southern Cotton Press & Mfg. Co. v. Galveston Wharf Co., 3 Wilson's Civ. Cas., p. 309; Cornwall v. Louisville & N. Ry. Co., 87 Ky., 72, 7 S. W., 553; Long Island Water Supply Co. v. Brooklyn, 166 U. S., 685, 41 L. Ed., 1165.

*Roberts & Orem,* of Houston, for appellee.

MR. JUDGE SMEDLEY of the Commission of Appeals delivered the opinion for the court.

Since the question certified by the Court of Civil Appeals is in substance whether the pleadings and evidence stated in the certificate precluded the condemnation sought by appellants, it is necessary to set out the entire certificate and the copy of the deed attached to it as an exhibit. They are as follows:

"The question of law hereinafter certified arises out of the facts appearing in the record of this cause, now pending undetermined·here on appeal from the County Court at Law of Harris County, which—for the purpose of the certificate—may be restated as follows:

"The Houston-Goose Creek Interurban, the corporate name of which is Houston North Shore Railway Company, and its lessee, The Beaumont, Sour Lake & Western Railway Company, an ordinary steam-railroad under the jurisdiction of the Texas Railroad Commission, and L. W. Baldwin and Guy A. Thompson, Trustees in Bankruptcy for both of these companies, pursuant to R. S. Titles 52 and 112, Articles 3264 et seq. and 6535 et seq., filed with the Judge of the County Court at Law of Harris County, Texas, their petition for condemnation of certain specifically described land, that is, the realty itself, being a strip 60 feet by 23,889 feet in Harris County, exclusive of improvements thereon and of a portion theretofore condemned. The land involved and its environs are shown on a blueprint appearing at page 588 of Vol. 3 of the Statement of Facts. The condemnees, named in the petition, are quite numerous. A complete list of them is set forth in an exhibit attached to the petition, they and their status, in epitome, being as follows:

"(1) H. C. Tyrrell, Trustess of Tyrrell & Garth Investment Company, a joint stock association, and that company itself, successors in title to the grantors in a certain deed, a copy of which is hereto attached, whereunder there was conveyed to an agent or trustee of the Houston North Shore Rail-

way Company (Harry K. Johnson), an easement for electric interurban railroad purposes over the particular land sought to be condemned. Such deed contained certain restrictions requiring the railway company forever to maintain certain passenger railroad schedules on and over the land conveyed by the deed, which land, now fully improved for interurban railroad purposes and now being used for such purposes, is the land now sought to be condemned. Incidentally, these successors of the grantors, because of asserted violations of the restrictions, now claim to be the owners of the land in question and of all of the improvements thereon. The improvements are alleged to be worth $200,000.00. The contention is that there have been violations of the restrictions, in consequence of which, the forfeiture clauses of the deed operate to place title to the land and improvements in the successors of the grantors. The condemnors vigorously deny the condemnees' ownership of the improvements, and deny that the restrictions have been violated. Prior to the institution of these condemnation proceedings, these condemnees sued the condemnors in the district court of Harris County, claiming the land and the improvements, and that suit was pending when this case was started and when it was tried.

"(2) The grantee in the deed just mentioned (Harry K. Johnson), who took the deed and the land as an agent or trustee for the Houston North Shore Railway Company and then conveyed the same to that company subject to the same restrictions and provisions for forfeiture as were set forth in the deed to him, is also a condemnee. He now claims the land and all of the improvements thereon; and, prior to the institution of these proceedings, sued in the district court of Harris County to recover the same, and that suit was pending when this suit was brought and when it was tried.

"(3) The mortgagees and lienholders, who had made loans to such grantors and this grantee, secured by mortgages and liens upon the land involved, are also parties. At least, one mortgagee of the original grantor claimed in these proceedings the right to have the recovery, if any, applied on his indebtedness, and filed pleadings to that effect.

"(4) There being a number of subdivisions of the land abutting upon the right of way in question, which were brought about by the original grantors and by their grantee and others, followed by sales of tracts in those subdivisions under instruments of conveyance, making reference, for the purposes of description, to maps or plats showing the railroad on the land

involved, such abutting owners were joined as condemnees upon the theory that possibly they became the owners of the fee if and when, in fact, a forfeiture came about. These abutting owners, in these proceedings, claimed the land in question and filed pleadings to that effect.

"(5) Those having liens or claims against such abutting property were also joined as condemnees on the theory that they had an interest if the abutting owners had an interest. The record shows that one of those, having a lien upon abutting property, formally answered in these proceedings. Some of the other lien holders with claims against the abutting owners answered orally before the Commissioners, and were present there where a written answer is not required.

"The list of defendants includes the 'unknown owner or owners of every part of the land sought to be condemned in these proceedings.' These unknown owners were cited by publication, and were represented by counsel appointed by the court, as were also their unknown heirs.

"With the condemnees denying the condemnor's right to condemn, prolonged hearings were carried on before the Commissioners, who made a lump-sum finding of $3,764.00 for the land sought to be condemned. Nothing was allowed as for consequential damages to nearby lands.

"Still denying the right of the condemnors to condemn, an appeal was taken by the condemnees to the County Court at Law, where, upon the conclusion of the testimony of the condemnors, it was ordered that the condemnors take nothing by their petition, and that the cause be dismissed 'for the reason that there was a failure to prove jurisdictional facts.'

"The condemnors' petition, as well as the proof they offered in support of it, showed upon the face thereof, that they had thus obtained under the deeds from the Tyrrell Trust, the Tyrrell & Garth Company, and Harry K. Johnson, by agreement with these grantors, their title to the same strip of realty itself that they thus sought to condemn in this proceeding, and that, without having repudiated any of their rights under such deeds, or ever having abandoned the land itself, but, on the contrary, being still in possession of it and the improvements thereon, and still operating interurban cars over it, with the claim that they had always complied with the conditions imposed upon them in that deed and intended to so continue unless and until their obligations thereunder were modified or changed as a result of these condemnation proceed-

ings, they yet asked that it be so condemned against those grantors, their successors, and assigns.

"Neither did their pleadings or proof show that any compensation for their existing rights or interests—other than such incidental ones as had resulted from the building and maintenance of the interurban pursuant to the copied deed—had ever been made or offered to any of the condemnees, nor were any proposed or tendered therein; on the contrary, the condemnors insisted that their right of condemnation existed without the making or tendering of any such compensation and notwithstanding both the stated conditions in the deed itself and the pleaded-fact that they still held and asserted their right to the property under it.

"The condemnors did, however, plead and offer proof to show that before instituting this condemnation proceeding they had entered into negotiations with the successors of their original grantors—that is, the Tyrrell & Garth Company—and with them alone of all the condemnees, in an effort to purchase the land before undertaking to condemn it, and that such efforts had failed; their proof as to the result of such negotiations was summarized by their plenary-agent in that behalf in these statements: 'Under no circumstances would I have paid the lowest figure that he ever asked. * * * The price the Tyrrells were willing to take was not acceptable to me with or without the releases.'

"Neither did the condemnors specifically plead that an effort to agree with the condemnees in advance on the value of the land to be condemned would have been futile, under a specification of the grounds for that averment, but their pleading simply was to the effect that they had failed to so agree with the condemnees, their averment upon that feature being *in haec verba* this: 'The plaintiffs cannot, and they have failed to, agree with said defendants, and each of them, on the value, etc.'; but the theory of their declared-upon action was that—while they thus had not made all the condemnees an offer for the land involved in advance, in fact none of them except the successors of the original grantors, Tyrrell & Garth Investment Company, as stated supra—since the record otherwise showed conclusively that certain others of the condemnees who had been cited by publication were impossible of access for any such offers, and that there were antagonistic claims *inter sese* between others of the condemnees, and that some of the latter were also claiming the improvements on the property against the world, that a title by negotiation was obviously impossible

of procurement, hence the same had been unnecessary.

"They further declared—and offered much testimony tending to prove the factual statements therein made—as follows:

" 'However, conditions that now exist, and which for some time past have existed, render economically impossible the performance and observance of the conditions and restrictions set forth in said deeds without imposing an undue burden on interstate and foreign commerce and without bringing about large losses in money to the plaintiffs, and especially to the plaintiff trustees, arising from the maintenance of the schedules called for by said deeds; the enforcement of such schedules now being highly burdensome to plaintiffs. Plaintiffs now recognize the right of the true owners of the property herein sought to be condemned to be compensated in accordance with law, and in this proceeding, for the value of such property and for the reasonable, actual amount of damages, if any, to such owner or owners, by reason of this Honorable Court's condemning such property.

" 'But this suit is not to be taken as an admission that there are any such damages; and this suit is not to be taken as an admission that these plaintiffs contemplate forthwith, upon the filing hereof, discontinuing the performance and observance by them of the conditions and restrictions imposed upon them by reason of said deeds, and each of them. On the contrary, these plaintiffs now allege that, in good faith, they have heretofore performed, and will hereafter continue the performance of, all such conditions and restrictions until the plaintiffs, by virtue of this proceeding, are entitled to use and enjoy said property without reference to said deeds or either of them.'

"As before indicated, whatever reversionary-rights the Tyrrell Trust or H. C. Tyrrell, Trustee, had under the deed to Harry K. Johnson, copy of which, with the specific description of the land deleted, has been attached hereto as Exhibit A, passed by the latter's deed to the condemnee, Tyrrell & Garth Investment Company, a joint stock association; further, as likewise indicated supra, Harry K. Johnson, who was acting in and under such copied deed as agent and trustee for the condemnor, Houston North Shore Railway Company, on January 24 of 1927, in turn conveyed all the interest he had acquired under that conveyance to the Railway Company, subject to the same restrictions as were therein imposed upon him, but, however, calling for a forfeiture thereunder to run

to himself, rather than to the Tyrrell Trust or H. C. Tyrrell, as for a violation of such restrictions.

"As is apparent, these proceedings show upon the face thereof that the appellants sought to free themselves from the restrictions imposed upon the several grantees under the deeds in evidence and by virtue of which alone they had acquired and operated the property for railway purposes, by this proceeding in condemnation alone against the grantors to them in such deeds, along with their successors, assigns, and all others who had actually or presumptively acquired rights touching the property which might affect the title thereto.

"Because of the public importance of the controversy thus raised, the exigencies entailed, and the evident desirability of having a finally-authoritative adjudication of it as soon as may be, this court—pursuant to R. S., Article 1851—on the facts stated, asks the following question:

"Did the trial court err in so refusing to retain jurisdiction —in other words, under the two statutory-titles cited, did the stated pleadings and evidence before it preclude absolutely the condemnation as sought, or did they present a justiciable question as to it that should have been tried out?"

"Exhibit A.
"Deed from H. C. Tyrrell, Trustee, to Harry K. Johnson, Trustee for Houston North Shore Railway Company.

"KNOW ALL MEN BY THESE PRESENTS: That I, H. C. Tyrrell,......trustee for the W. C. Tyrrell Trust, a joint stock association,......for and in consideration of the sum of ten ($10.00) dollars to me in hand paid by Harry K. Johnson, receipt of which is hereby acknowledged and confessed, have granted, bargained and sold, and by these presents do grant, bargain, sell and convey unto the said Harry K. Johnson of Harris County, Texas, his heirs and assigns, the free and uninterrupted use, liberty and privilege of passage in and along a certain way across my lands located in Harris County, Texas, (detailed description omitted).

"To have and to hold unto the said Harry K. Johnson, his heirs and assigns, said above described tract of land as an easement, or right-of-way for the construction and operation of an Intreurban Railroad over and across the same;

"Provided however, that the rights herein granted are to be conditioned as follows, to-wit: First: That the right-of-way and occupancy of the land above described shall be forfeited in the event of failure at any time to operate thereon an Inter-

urban Railroad for a period of thirty (30) successive days, exclusive of such time as operations may be prevented by conditions over which grantee has no control. Operation as an Interurban Railroad as above contemplated, must include a passenger schedule with first class coaches operated by electricity or gas engines passing over the entire right-of-way herein or hereafter granted by me or my successor in interest, to the said Harry K. Johnson, said coaches to be operated on a regular schedule of at least one (1) train not less than every two (2) hours of each day from six (6) o'clock A. M. until twelve (12) o'clock midnight. Regular service on said Railroad must begin not later than the 1st day of July, 1927, but to the extent grantee is delayed in construction by strikes, litigation or other conditions, over which he has no control, time shall be added to the above limit. The requirement that trains propelled by electricity or gas engines on said Interurban Railroad is not intended to prevent the use of trains propelled by steam in the event of an emergency or in addition to electricity or gas trains. In the event of forfeiture of right-of-way, all buildings erected thereon shall become my property without the necessity for an accounting therefor, and as liquidated damages, however, grantee is given the privilege of removing all rails, and attachments, all overhead construction and electric equipment, provided such removal is accomplished within ninety (90) days from date of forfeiture, or the same shall likewise become my property as liquidated damages. Second: The parties hereto being aware of the tendency of the courts to construe declarations of forfeiture as conditions rather than forfeiture provisions, here declare that it is intended in the grant of the easement herein provided for, that a forfeiture is intended in the event the conditions hereinabove stated are violated by grantee herein. And it is expressly agreed that in accordance with the Declaration of Trust, creating the W. C. Tyrrell Trust, that there shall be no personal liability upon the trustee herein, or upon the holders or owners of the Certificates of Beneficial interest in said Trust by reason of the obligations and warranties herein undertaken, but that the vendee shall look exclusively to the assets of the W. C. Tyrrell Trust for the enforcement of the obligations herein undertaken by H. C. Tyrrell, trustee.

"In witness whereof I have hereunto set my name this 5th day of October, A. D. 1925.

"W. C. Tyrrell Trust,
By H. C. Tyrrell, Trustee."

■■ The question certified requires the consideration both of the petition for condemnation and of the evidence offered. In determining the sufficiency of the petition we may look to the copy of the petition appearing in the transcript as well as to the statement of its substance in the certificate. Watkins v. Minter, 107 Texas, 428, 432, 180 S. W., 227; Employers' Liability Assurance Corporation v. Young County Lumber Company, 122 Texas, 647, 653, 64 S. W. (2d) 339. In so far, however, as the question certified involves a consideration of the evidence, we are confined to the evidence as set out in the certificate and are neither required nor permitted to examine or consider the evidence contained in the statement of facts. Goldstein v. Union National Bank, 109 Texas, 555, 561, 213 S. W., 584; Fort Worth Improvement District No. 1 v. City of Fort Worth, 106 Texas, 148, 155, 158 S. W., 164; Employers' Liability Assurance Corporation v. Young County Lumber Company, supra.

The first proposition submitted by appellees as supporting the trial court's action, in instructing the jury to render a verdict in their favor, entering judgment that appellants take nothing by their petition and dismissing the cause for failure to prove jurisdictional facts, is that the county court was without jurisdiction to entertain the suit because it affirmatively appeared from the petition and the proof offered in support of it that appellants already had, or were asserting, title to the right of way sought to be condemned. They submit that what appellants "want to condemn" is appellees' right to have a definite schedule maintained as prescribed in the deed from the W. C. Tyrrell Trust to Harry K. Johnson copied above, but that what they seek to condemn measured by their pleadings is the strip of land, or a right of way over the strip of land, described in the pleadings; and they contend that this strip of land, or a right of way over it, cannot be condemned by appellants because appellants have possession of it and are claiming title to it under the said deed.

Appellants do by their pleadings and proof claim such title as was conveyed by the deed. It grants a right of way or easement in and along the strip of land for the construction and operation of an interurban railway, but the right granted is upon condition subsequent, it being expressly provided that the right or title will terminate or forfeit in the event of failure at any time to operate thereon an interurban railway for a period of thirty successive days, operation to include a passenger schedule of at least one train not less than every two

hours each day. The deed contains no covenant or agreement to operate.

■ Appellee Houston North Shore Railway Company was incorporated as an interurban electric railway company and, after acquiring under the said deed title to a right of way over the strip of land sought to be condemned, it constructed and has since operated part of its line thereon. The petition asserts the power of eminent domain and the right to condemn the land described in the petition under the provisions of Chapter 13 of Title 112 of the Revised Civil Statutes of 1925. It undertakes to acquire by condemnation all such property, right, title and interest as the appellees and each of them have in the land, recognizing the obiligation of appellants to pay to the owners the value of the property and the damages, if any, as ascertained and adjudicated. Article 6535 of Chapter 13 confers upon interurban electric railway companies "the right of eminent domain with all the rights and powers as fully as are conferred by law upon steam railroad corporations," and provides that they shall have the right and power to condemn "the lands, rights of way, easements and property of any person or corporation whomsoever for the purpose of acquiring rights of way upon which to construct and operate their lines of railway and sites for depots and power plants." Various articles of Chapters 6 and 7 of Title 112 describe the property which may be condemned by railroad corporations in such general terms as "land," "real estate," "property," etc. Article 6339 of Chapter 6 provides that the right of way secured by condemnation to any railway company in the State shall not be construed to include the fee simple estate in lands. An easement is acquired. This article is an enunciation of the rule existing without statute, the basis of which is the fundamental principle that no more property and no greater estate or interest may be taken than the public use requires. Calcasieu Lumber Company v. Harris, 77 Texas, 18, 13 S. W., 453; Brightwell v. International-Great Northern Railroad Company, 121 Texas, 338, 49 S. W. (2d) 437, 84 A. L. R., 265; McInnis v. Brown County Water Improvement District No. 1, 41 S. W. (2d) 741 (application for writ of error refused); 10 R. C. L., Sec. 78, pp. 88-89; Nichols' Eminent Domain (2nd Ed.), Sec. 150, Vol. 1, p. 461.

■■ The articles of the statute which prescribe the procedure for the exercise of the right of eminent domain (Articles 3264-3271, Title 52) describe that which may be taken as "real

estate," "land," "property" and make provision for the award of compensation to the "owner." A condemnation statute which gives broadly the right to condemn lands authorizes the taking of all property or rights of the condemnee incidental, or attached, to land. McGee Irrigation Ditch Company v. Hudson, 85 Texas, 587, 22 S. W., 398, 967. And it is generally held that the power to take property for public use "extends to every species of property and every character of right, title or interest therein." McInnis v. Brown County Water Improvement District No. 1, 45 S. W. (2d) 741 (application for writ of error refused); Lewis, Eminent Domain (3rd Ed.), Sec. 412, Vol. 2, p. 743. The term "owner" as used in condemnation statutes embraces not only the owner of the fee but a tenant for life, a lessee for years, and any other person who has an interest in the property that will be affected by the condemnation. Fort Worth & Denver S. P. Ry. Co. v. Judd, 4 S. W. (2d) 1032; Note 2, A. L. R., pp. 785-788; Note 95, A. L. R., pp. 1090-1091. Such are the rules because only when every interest of every character in the land is acquired can the property be devoted fully and without restraint or interference to the public purpose, and because only when every person having an interest in the property is compensated as an owner is the constitutional mandate fulfilled.

Appellants' petition alleges that at the time the deed from the Tyrrell Trust to Johnson was executed the grantor was the owner of the legal title. It sets out the contents of the deed, including its condition, and alleges appellants' title under the deed and the construction and operation of the interurban line, and shows by reasonable intendment, if not by express allegation, that appellees have together or severally whatever title the Tyrrell Trust Company had after the conveyance of the conditional easement, including the right of reversion. As has been said, the petition seeks and prays for the condemnation of every right, title and interest of all of appellees in the strip of land.

It is apparent from the allegations in the petition and from the evidence offered by appellants, as stated in the certificate of the Court of Civil Appeals, that appellants have and claim only the title to the conditional easement created by the deed and that appellees are the owners of the fee title to the land subject to the right of possession and use by the owner of conditional interest. Such interest or estate of appellees is "land" and they are "owners" within the meaning of those words as used in the condemnation statutes.

■ It is true, as has been shown, that appellants can acquire by condemnation only an easement and not the fee title, but the easement so acquired differs in quality and duration from that created by the deed in that the statutory easement is unconditional and permanent in its nature, to be terminated only upon abandonment by nonuser. Muhle v. New York, etc., Ry. Co., 86 Texas, 459, 23 S. W., 809; 10 R. C. L., Sec. 117, p. 133; Lewis' Eminent Domain (3rd Ed.), Sec. 861, Vol. 2, p. 1499; Nichols' Eminent Domain (2nd Ed.), Sec. 512, Vol. 2, pp. 1418-1419.

We conclude, therefore, that on the face of the proceedings, the petition and the evidence offered to support it, appellees have such title or interest in the strip of land as is subject to condemnation under the statutes; that such title or interest is different from that claimed by appellants under the deed; and that appellants are not undertaking by their suit to acquire something that they already own, but on the contrary an easement without condition of forfeiture and permanent in its nature as contemplated by the condemnation statutes.

■■ The narrowed question is: Do the allegations and proof of appellants' present assertion of title to the easement created by the deed operate as a bar to their acquisition of an unconditional easement by condemnation? "A party cannot proceed to condemn land as the property of another and then in that same proceeding set up a paramount right or title in itself either by prescription, dedication or otherwise." Lewis' Eminent Domain (3rd Ed.), Sec. 441, Vol. 2, p. 1137. If the petitioner in condemnation claims the fee title to the property his petition should be dismissed. Colorado M. Railway Company v. Croman, 16 Colo., 381, 27 Pac., 256. "Unless title in the condemnee is admitted, the county court is without jurisdiction." McInnis v. Brown County Water Improvement District No. 1, 41 S. W. (2d) 741, 744 (application for writ of error refused). The reasons for the foregoing general rules are: that there is irreconcilable inconsistency between an allegation by the condemnor of the entire title, or a paramount title, in himself and the taking of the property of another by the proceeding; that condemnation rests upon necessity, and there can be no necessity to acquire what one already owns; and that the county court is without jurisdiction to try title to real property. These general rules have no application when the petition for condemnation alleges in the petitioner a right or title temporary in dura-

tion or subject to forfeiture for breach of a condition, and in the condemnee the fee title or the reversion.

The following statement appears in the text of Corpus Juris:

"An interest in property sought to be condemned held by the party seeking to acquire title is not a bar to a proceeding to acquire a fee title to the same, where his rights are clear and the necessity for a fee title has been legally determined. So the mere fact that a city has an easement in land for street purposes does not preclude it from acquiring a fee title for the same purposes by condemnation proceedings, and it is no objection to a proceeding to acquire land in fee that petitioner is a lessee of the premises for a term of years." 20 C. J., Sec. 328, p. 911.

In one of the cases cited in support of the quoted text, New York & Harlem Railway Company v. Kip, 46 N. Y., 546, 7 Am. Rep., 385, the railway company was occupying the land under a lease for a term that had several years to run. It was held that such lease and possession under it were not a bar to the condemnation of the full title that the law permitted the railway company to acquire. In so holding the court said:

"A usufructuary right, either temporary as to its continuance or limited in its character, does not give to the applicant the property, the land which it has the right under the statute to acquire. *Whenever the interest acquired under its lease is not such an interest as the proper running and operating of its road require there can be no good reason why proceedings may not be taken to acquire the land in place of the term under the lease.*" (Our italics). See also: Russell v. Trustees of Purdue University, 93 Ind. App., 242, 178 N. E., 180.

Appellants allege in their petition that conditions now exist, and have for some time existed, which render economically impossible the performance and observance of the conditions and restrictions set forth in the deed without imposing an undue burden on interstate and foreign commerce and without bringing about large losses in money to appellants arising from the maintenance of the schedules called for by the deed, the enforcement of such schedules now being highly burdensome to appellants. The certificate of the Court of Civil Appeals states that much testimony was offered tending to prove the facts so alleged. These facts manifest a necessity for the acquisition of the full title that may be acquired by condemnation and

bring the case within the rule announced by the emphasized portion of the foregoing quotation.

The title of appellants is fairly comparable to that of a railway company occupying its right of way under an unexpired lease for a term of years. If, as is held by the authorities above cited, the unexpired lease is not a bar to the acquisition of full title by condemnation, then the conditional title asserted by appellants should not operate as a bar. The rights of the lessee will cease at the expiration of the term and the rights of appellants will be forfeited whenever they are obliged, or see fit, to cease to operate in accordance with the requirements of the deed. Furthermore, we construe appellants' petition as expressing a present intention to permit in this proceeding and as a part of it the termination of their title under the deed. They allege: "That, in good faith, they have heretofore performed, and will hereafter continue the performance of, all such conditions and restrictions until the plaintiffs, by virtue of this proceeding, are entitled to use and enjoy said property without reference to said deeds or either of them." This allegation is in effect a representation or admission by appellants that in the trial of the condemnation proceeding the titles of the respective parties shall be regarded and treated as if the title under the deed were terminated by the breach of its condition at the time of the trial.

█ Appellees insist that the real purpose of the proceeding is to condemn their rights to have the schedule of operation maintained and that appellants should not be permitted, by resorting to condemnation, to escape the obligations imposed by the deed. The contention is fully answered by the fact that the provisions of the deed with respect to operation constitute a condition, not a covenant. Appellees do not have under or by virtue of the deed an enforceable obligation. Cessation of operation in accordance with the provisions of the deed merely results in the forfeiture of title under the deed and is not the breach of a contractural obligation. If the deed had contained contractural obligations as to the nature and extent of the operation of trains, such contract could not have defeated the grantee's right of condemnation. Bowers v. City of Taylor (Com. App.), 16 S. W. (2d) 520; Long Island Water Supply Company v. Brooklyn, 116 U. S., 685, 41 L. Ed., 1165, 17 Sup. Ct., 718; In re City of Grand Rapids v. Grand Rapids & I. Ry. Co., 66 Mich., 42, 33 N. W., 15; Cornwell v. Louisville & Nashville Ry. Co., 87 Ky., 72, 7 S. W., 553, 556.

Appellants undoubtedly could cease to operate their trains on the prescribed schedule, permit the forfeiture of their title, remove the rails, attachments, overhead construction and electrical equipment within ninety days after the forfeiture and then acquire by condemnation a right of way over the same strip of land or over other land. If such course were followed, appellees could not complain that through it appellants had avoided the performance of obligations with respect to operation or had condemned their rights under the contract. The same result may be accomplished without interruption of the operation of the interurban line, without useless expenditure and without depriving appellees of contractual or other rights protected by the constitution, by permitting in the condemnation proceeding the termination of the conditional title under the deed and the acquisition of the full and unconditional title that may be acquired under the condemnation statutes.

It is our opinion that condemnation, as sought, is not precluded by appellants' assertion, as made, of title under the deed.

The allegations of the petition with respect to inability to agree, and the futility of attempting to agree with the various defendants as to the value of the land are subject to criticism for want of particularity, but in our opinion they are not fatally defective.

■ The petition alleges: "That plaintiffs cannot, and they have failed to, agree with said defendants, and each of them, on the value of the outstanding property and rights of the defendants, and on damages, if any, which will arise from this appropriation." This is a sufficient allegation, tested by general demurrer, of inability to agree. Texas & N. O. R. Co. v. City of Beaumont, 285 S. W., 944 (application for writ of error refused); Malone v. City of Madisonville, 24 S. W. (2d) 483. It is shown by the certificate of the Court of Civil Appeals that appellants made an effort to agree upon value with the Tyrrell & Garth Investment Company, the successor in title of the W. C. Tyrrell Trust, which effort failed, and that no effort was made to agree with the other parties.

■ Appellees properly concede that when attempt to agree upon value would be futile no attempt need to made. City of Dallas v. Crawford, 222 S. W., 305; Texas & N. O. R. Co. v. City of Beaumont, 285 S. W., 944 (application for writ of error refused); Clements v. Fort Worth & D. S. P. Ry. Co., 7 S. W. (2d) 895; Lone Star Gas Co. v. Birdwell, 74 S. W. (2d) 294; 16 Tex. Jur., Sec. 118, pp. 732-733; 20 C. J., Sec. 318, p. 896.

They contend that, since appellants rely upon the futility of an effort to agree with appellees other than the Tyrrell & Garth Investment Company, the petition is fatally defective in not alleging such futility and that the cause was properly dismissed by the trial court.

Since this contention presents the question whether the petition is good against general demurrer, the meager allegations above quoted, although wanting in particularity and objectionable as being conclusions, may be aided by other allegations contained in the petition and by such essential facts as may be fairly inferred from the facts alleged. Humphreys Oil Co. v. Liles (Com. App.), 277 S. W., 100; American Produce Co. v. Gonzales (Com. App.), 1 S. W. (2d) 602; Martinez v. Gutierrez (Com. App.), 66 S. W. (2d) 678; Hovenkamp v. Union Stockyards Co., 107 Texas, 421, 180 S. W., 225. The petition contains in substance the following allegations: that both Tyrrell & Garth Investment Company and defendant Johnson claim title to all of the land sought to be condemned; that many of the defendants have purchased lots or tracts of land in reliance upon plats of record showing such lots or tracts to abut on the right of way, and that they are claiming to be the owners of portions of the right of way described in the petition or of interests therein; and that by reason of the conflicting claims of the defendants the value of the property sought to be condemned should be found and awarded *in solido* and there should be a single joint recovery in favor of all of the defendants to be later partitioned and distributed among them in accordance with their respective rights. Among the defendants are unknown heirs and unknown owners.

Thus appellants alleged and proved the making of an effort to agree upon the value of the property with the Tyrrell & Garth Investment Company, the apparent owner of the fee or the right of reverter in all the property, and the failure of the effort, and also alleged such conflicting claims to all of the property by another defendant and to portions of it by various other defendants as to show the futility of further effort to arrive at an agreement. The allegation that "plaintiffs cannot, and they have failed to, agree with said defendants and each of them," when read in connection with the other allegations above referred to, and when given the benefit of every reasonable intendment, mean that plaintiffs cannot agree and have failed to agree with the various defendants claiming to be the owners, because, in view of their conflicting claims affecting the entire

property and the fact that some of the claimants are unknown, it would be futile to make the effort.

■ The question of misjoinder of parties defendant is discussed in the briefs but it is not within the question certified. If there were misjoinder, it would not deprive the trial court of jurisdiction and would not warrant dismissal of the entire proceeding. The question is properly raised by special exception or by plea in abatement; and the improper joinder of parties is not a ground for dismissal of the suit as to those properly joined. 32 Tex. Jur., Secs. 92, 93, pp. 133-135; Sec. 95, p. 136.

■ The pendency in district court of a suit between one of appellants as plaintiff and appellee Johnson as defendant, in which Johnson claimed title to the right of way, the rails, overhead equipment and other improvements on the right of way, did not deprive the county court of jurisdiction of the condemnation proceeding. Rabb v. La Feria Mutual Canal Co., 62 Texas Civ. App., 24, 130 S. W., 916 (application for writ of error refused). The purpose of the condemnation proceeding is, without undue delay, to determine the right to condemn and to fix the amount to be paid the owner for the property taken, not to try controversies as to title. Davidson v. Texas & N. O. R. Co., 29 Texas Civ. App., 54, 67 S. W., 1093; Rabb v. La Feria Mutual Canal Co., supra; McInnis v. Brown County Water Improvement District No. 1, 41 S. W. (2d) 741 (application for writ of error refused); Angier v. Balser, 48 S. W. (2d) 668 (application for writ of error refused); 16 Tex. Jur., Sec. 116, p. 730.

If on the trial in county court controversies arise as to the ownership of the right of way or the improvements on it, the trial may nevertheless proceed, leaving questions of title to be determined by a court of competent jurisdiction. The method of procedure in such situation is discussed in the authorities last above cited.

Answering the question certified: The trial court erred in refusing to retain jurisdiction. The stated pleadings and evidence before the trial court did not preclude the condemnation as sought. They presented a justiciable question that should have been tried.

Opinion adopted by the Supreme Court November 12, 1936.