STATE of Texas, Appellant,

v.

FIRST INTERSTATE BANK OF TEXAS, N.A., Lienholder, Appellee.

No. 3–93–248–CV.

Court of Appeals of Texas, Austin.

March 2, 1994.

Rehearing Overruled Aug. 17, 1994.

Dan Morales, Atty. Gen., Mark Heiden-heimer, Asst. Atty. Gen., Austin, for appellant.

Susan P. Burton, Clark, Thomas, Winters & Newton, Austin, for appellee.

Before POWERS, JONES and KIDD, JJ.

POWERS, Justice.

The State of Texas appeals from a summary judgment obtained by First Interstate Bank of Texas, N.A., in the State's condemnation suit against land upon which the bank held a mortgage lien. We will affirm the judgment.

## THE CONTROVERSY

Crossroads, Inc., owned in fee simple certain land in Williamson County and had given the Bank a mortgage lien on the land to secure Crossroads' debt to the bank in the amount of $3,214,788.[1] The State commenced condemnation proceedings against the land, seeking most but not all the land for highway purposes. The State's petition designated both Crossroads and the Bank as "owners" of the property.[2]

The special commissioners awarded $6,363,000 in the proceeding, making no allocation as between Crossroads and the Bank. The State filed objection to the award and contemporaneously deposited with the court the lump sum of $6,363,000, subject to the order of Crossroads and the Bank.[3] Crossroads also filed objection to the commissioners' award and moved contemporaneously,

---

1. We have simplified the facts of the case considerably in the interest of clarity. The facts stated permit a discussion of the theories advanced by the parties in their briefs.

2. Section 21.012(b) of the Property Code requires that the condemnor's petition "describe the property to be condemned" and "state the name of the owner of the property if the owner is known." Tex.Prop.Code Ann. § 21.012(b)(1), (3) (West 1984). The property described in the State's petition was the real property owned in fee simple by Crossroads. It is undisputed that the Bank owned no interest in the land apart from the security interest of its mortgage lien.

3. Section 21.021 of the Property Code establishes a means by which the condemnor may enter upon and obtain possession of the condemned property between the time of the commissioners' award and the conclusion of any further litigation. The condemnor may obtain the right of possession for the period indicated if the condemnor either (1) "pays to the *property owner* the amount of damages and costs awarded by the special commissioners" or (2) "deposits that amount of money with the court subject to the order of the *property owner*...." Tex.Prop.Code Ann. § 21.021(a)(1) (West 1984) (emphasis added). In the present case, the State chose the second alternative of depositing the money with the court subject to the order of Crossroads and the Bank.

joined by the Bank, to withdraw the $6,363,-000. No party objected to withdrawal of the deposit and Crossroads received the money. Crossroads paid its $3,214,788 debt to the Bank and kept the balance. The Bank released its lien on the property. The trial court granted the Bank summary judgment to the effect that it had no further interest in the litigation after the extinguishing of its lien, and no liability to the State arising out of the condemnation proceeding.

Crossroads and the State subsequently settled and compromised their controversy and reduced their bargain to an agreed judgment signed by the court. The agreed judgment stipulates that Crossroads' damages for the condemnation are $3,534,337, or about half the deposit made by the State and withdrawn by the Bank and Crossroads. The judgment awards the State recovery of the difference from Crossroads, which has not and evidently cannot pay the judgment debt. The Bank was not a party to the agreed judgment, having obtained previously the summary judgment that it was not liable for the difference.

In its appeal, the State contends the summary judgment in favor of the Bank was erroneous because the Bank was liable for the difference under the terms of section 21.044 of the Property Code, properly construed. That statute provides the property owner may recover damages for any injury occasioned by the condemnor's taking possession of the property *pendente lite*, in cases where it is finally adjudged that the condemnor did not have the right to condemn the property; and the court may order the damages paid from any money deposited with the court by the condemnor. The statute concludes with the following sentence: "However, if the award paid to or appropriated by the property owner exceeds the court's final determination of the value of the property, the court shall order the *property owner* to return the excess to the condemnor." Tex. Prop.Code Ann. § 21.044(b) (West 1984) (emphasis added). This statutory provision is the basis of the State's claim against the Bank.

The State argues the words "property owner," as used in section 21.044(b) of the Property Code, must include mortgagees and others having less than a fee interest in the land because the words "property owner" as used *elsewhere* in the condemnation statutes have been held to include persons holding less than a fee interest. *See, e.g., Elliott v. Joseph*, 163 Tex. 71, 351 S.W.2d 879, 883–84 (1961) (holding the term "owner," under former article 3265, section 3, includes lessee for a term of years). We reject the theory for the reasons given below.

## DISCUSSION AND HOLDINGS

■ The term "property owner," or some similar term, is used throughout the condemnation statutes. *See* Tex.Prop.Code Ann. §§ 21.012–.014, § 21.016 (West 1984); §§ 21.019–.021 (West 1984 & ˙Supp.1993); §§ 21.041–.045 (West 1984 & Supp.1993); § 21.062 (West 1984). It is true we must *presume* the legislature intended the term should have the same meaning wherever used in the condemnation statute. *See Fox v. Burgess*, 157 Tex. 292, 302 S.W.2d 405, 407 (1957); *Hufstedler v. Harral*, 54 S.W.2d 353, 355 (Tex.Civ.App.—Amarillo 1932, writ ref'd). What single meaning shall we then impute to the term "property owner" as its presumed meaning?

■ It is well settled in legal usage, and we believe ordinary usage as well, that a mortgagee is not an "owner" of the property that secures his debt (A mortgagee is, of course, owner of the debt and its incident, the security interest.). A mortgagee has no proprietary interest, such as the right to dispose of the property, and no right of possession unless and until he acquires them by foreclosure of his lien. *Pearce v. Stokes*, 155 Tex. 564, 291 S.W.2d 309, 312 (1956); *Humble Oil & Ref. Co. v. Atwood*, 150 Tex. 617, 244 S.W.2d 637, 640 (1951); *Carroll v. Edmondson*, 41 S.W.2d 64, 65 (Tex.Comm'n App.1931, judgm't adopted); Madison Rayburn, *Texas Law of Condemnation* § 79, at 289 (1960); John Huffaker, Note, *Condemnation—The Mortgagee's Interest in the Condemnation Award For a Partial Taking of the Mortgaged Property*, 4 Tex.Tech L.Rev. 405, 406 (1973). A mortgagee could not, for example, be a "property owner" entitled to

recover moving expenses as damages under section 21.043(a) of the Property Code.

Moreover, we believe our courts have implicitly recognized that the legislature presumably intended the legal sense of the term "property owner" throughout the condemnation statutes. The courts have implied as much by the weighty justifications they have given for *departing* from that presumed meaning in particular instances.

For example, the condemnation statutes require that the "property owner" be designated in the condemnor's petition and require that he be given compensation for the taking or damaging of his property. *See* Tex.Prop.Code Ann. §§ 21.012(b)(3) (West 1984); §§ 21.041, 21.042 (West 1984 & Supp. 1993). Under predecessor statutes, the courts held that a lien holder *was* a "property owner" entitled to appear and recover damages in the condemnation suit for injury to his interests. The courts that held to this effect did *not* do so because they believed the legislature intended that the words "property owner," as used in the condemnation statutes, *included* owners of interests in the land less than a fee interest. Rather, the courts reasoned that holders of non-fee interests were *presumably* excluded from the term "property owner" as used in the condemnation statutes, *but* they could come within that term *by judicial construction* of a particular statute when that was necessary to avoid an absurd result.

■ The courts reasoned as follows, for example, in deciding whether a lienholder was an "owner" of property under the statutes requiring payment of compensation when "property" is taken. A lienholder's interest is entirely unaffected by the final judgment in a condemnation suit if he is not a party. His lien survives as an encumbrance against the property and an impediment to the progress of the intended improvement. The condemnor might, of course, maintain a separate condemnation action against the lienholder, but this would be unnecessarily expensive and contrary to the public interest in resolving in a single suit the claims of all persons entitled to damages by reason of the taking. Consequently, the lienholder may be treated as a "property owner" so as to permit a single suit, "because only when every interest of every character in the land is acquired can the property be devoted fully and without restraint or interference to the public purpose." *Houston N. Shore Ry. v. Tyrrell,* 128 Tex. 248, 98 S.W.2d 786, 793 (1936); *see also Glade v. Dietert,* 156 Tex. 382, 295 S.W.2d 642, 646 (1956); *Aggs v. Shackleford Co.,* 85 Tex. 145, 19 S.W. 1085, 1087 (1892); *Acree v. State,* 47 S.W.2d 907, 909 (Tex.Civ.App.—Waco 1932, writ dism'd). This justifying rationale is entirely unnecessary and irrelevant *except* as against a presumption that the words "property owner," as used in the condemnation statutes, do *not* include lienholders. Consequently, this presumption prevails absent a reason, such as that given in *Tyrrell* and *Dietert,* for departing from the presumption by judicial construction. *See, e.g., Langston v. State,* 315 S.W.2d 90, 92–93 (Tex.Civ.App.—Waco 1958, no writ) (holding mortgagee not a "property owner" whose absence from suit will render condemnation void).

■ With regard to section 21.044(b) of the Property Code, we find no similar justification for departing from the presumption that the term "property owner," as used therein, excludes mortgagees. Section 21.-044(b) operates in conjunction with section 21.021, the latter being a provision that allows a condemnor to acquire possession of the property pending further litigation after the commissioners' award. Section 21.021 originated in an enactment for a specific purpose—to meet an emergency in "[t]he fact that great enterprises are necessarily delayed and hindered in their right to enter upon and take possession of property by the present condition of our law...." Act of April 15, 1899, 26th Leg., R.S., ch. LXX, § 3, 1899 Tex.Gen.Laws 105, 106 (since amended). Under this enactment, the condemnor might obtain possession of the condemned property *pendente lite,* provided he deposited *twice* the amount of damages fixed by the commissioners. *Id.* § 1. Otherwise, the statutory arrangements are basically the same in section 21.021, which requires deposit of the money "subject to the order of the property owner." Tex.Prop.Code Ann. § 21.021(a)(1) (West 1984). That the deposit must be made

"subject to the order of the property owner" implies that the deposit must be unqualified and unconditional, the condemnor bearing any risk of loss occasioned by an irregular disposition of the money. *City of San Antonio v. Astoria,* 67 S.W.2d 321, 323 (Tex.Civ. App.—San Antonio 1933), *aff'd,* 128 Tex. 284, 96 S.W.2d 783 (1936); Julius L. Sackman, 6 *Nichols' The Law of Eminent Domain* § 26.61 at 26–563 (3d ed. 1990). Unless those be the terms of the deposit, the condemnor has not paid compensation *before* the taking of the land, as the constitution requires. Tex. Const. art. I, § 17.

But the condemnor is not without protection against the risk involved. He may simply orchestrate his project so that he does not require possession in advance of a final judgment. He may object to the property owner's withdrawal of the deposit if he fears any irregular disposition of the money or if he believes the final damages fixed by the court will exceed the amount deposited, coupled with a chance that the property owner might not be able to repay the excess withdrawn. Indeed, it is said that the condemnor has a *duty* to object and protect himself in such circumstances. *Wynnewood Bank & Trust v. State,* 767 S.W.2d 491, 496 (Tex.Civ. App.—Dallas 1989, no writ). Given that a mortgagee ordinarily has no right of possession and, that the deposit is for the benefit of the condemnor who has sufficient means of protecting himself against any loss, we see no justifying rationale for our construing section 21.044(b) contrary to its presumed meaning, which excludes mortgagees from its scope. We hold accordingly.

It may be the State contends alternatively that the Bank has an equitable obligation to repay the excess of the withdrawn deposit over the amount fixed as damages in the agreed judgment. The State does not make this argument explicitly, but does place great emphasis upon a statement in *Wynnewood* that a lienholder's security interest is transferred to the deposit when it is placed in court by the condemnor.[4] *Wynnewood* deals with such a theory. Consistent with *Wynnewood,* however, we hold the State is not entitled to recover in equity because there is no showing that the State exercised reasonable diligence to protect itself by the means available to it. *Wynnewood Bank & Trust,* 767 S.W.2d at 496–97.

Accordingly, we affirm the judgment below.

Affirmed.

---

4. We adhere, of course, to our construction of the relevant statutes as set out in the foregoing part of the text. Our alternative holding refers to a matter urged vigorously in the State's brief. When the mortgagee is made a party to the condemnation suit, and has only a security interest in the property, it is said that his rights against the property are supplanted by the condemnor's deposit but *follow in equity* the award of the special commissioners. The mortgagee is then entitled to the first of any proceeds realized, to the extent of the unpaid debt when the whole of the property is taken, or to the extent of any impairment of his security interest when only a part of the property is taken. *See generally* Julius L. Sackman, 2 *Nichols' The Law of Eminent Domain* § 5.18 (3d ed. 1990); Huffaker, *supra;* Harold Don Teague, *Condemnation of Mortgaged Property,* 44 Tex.L.Rev. 1535 (1966); Recent cases, *Eminent Domain—Rights of a Mortgagee,* 11 Tex.L.Rev. 387 (1933). These authorities also discuss the interesting question of how any impairment of the mortgagee's security interest should be measured in a partial taking. That issue is not material here.

We are uncertain why the State emphasizes the transfer of the mortgagee's security interest from the property to the commissioners' award. This proposition does not seem to bear on the question of whether the legislature intended the words "property owner" to include mortgagees by its use of the words in section 21.044(b) of the Property Code. And the Bank makes no claim against the condemned *property;* it urges indeed that its interest has been satisfied entirely by the first proceeds from the *award* to which its rights had been transferred in equity. As mentioned in the text, it may be that the State claims a right of restitution in equity—a claim we reject for the reason given.