Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)


SUNBELT PROPERTIES, A PARTNERSHIP
)


AKA TIGUA SHOPPING CENTER A/K/A
)
 

NORTH LOOP BLDG.,
)
 No. 08-02-00322-CV

)


 Appellants,
)
 Appeal from

)
 

v.
)
 County Court at Law No. 7

)


THE STATE OF TEXAS,
)
 of El Paso County, Texas

)


 Appellee.
)
 (TC# 99-4054)


MEMORANDUM OPINION



 Sunbelt Properties, a Partnership, (Sunbelt) appeals from a judgment requiring it to refund
excess proceeds to the State of Texas in a condemnation proceeding. We affirm.

FACTUAL SUMMARY


 On December 2, 1999, the State filed a petition for condemnation seeking a partial taking of
property located on North Loop Road in El Paso for an expansion of North Loop. The petition
named the following as defendants: Sunbelt, which is the fee simple owner and mortgagor of the
property and a shopping center located on the property, and Raymond Malooly and Betty L.
Hampton, who are mortgagees. (1) The Special Commissioners awarded $170,000 payable jointly to
Sunbelt, Raymond Malooly, Betty L. Hampton, and the tenants in possession of the property. 
Sunbelt objected to the award. After the State deposited the amount of the award into the registry
of the court, Sunbelt filed a motion to disburse the funds to Sunbelt and its mortgagees, Malooly, and
Hampton. At the hearing on the motion, Sunbelt established that it was the owner in fee simple title
of the property and the property was subject to mortgages and first deeds of trust in favor of Malooly
and Hampton. The deed of trust executed by Sunbelt to Hampton specifically provided that she
could participate in any condemnation proceeding and would be entitled to the payment of any
award. Sunbelt provided a proposed order for the disbursal of the funds evidencing an agreement
between Sunbelt, Malooly, and Hampton regarding the amounts to be disbursed to each of them:
$24,236.72 to Sunbelt, $27,644,16 to Raymond Malooly, and $118,119.12 to Hampton. The trial
court signed the order on June 14, 2000. 

 The trial court conducted a trial de novo on Sunbelt's objection to the award by the special
commissioners. The parties stipulated that the fair market value of the part taken was $19,800. The
jury determined that the damages to the remainder of the property and the improvements were
$119,200 for a total fair market value of $139,000 ($19,800 plus $119,200), which resulted in a
difference of $31,000 between the award of the special commissioners and the fair market value of
the property determined at trial. Because the entire sum of $170,000 had already been disbursed
from the registry of the court, the State requested that Sunbelt return to the State the excess amount
of $31,000. The trial court overruled Sunbelt's objection and entered a judgment requiring it to
return the excess award. Sunbelt filed a motion for new trial asserting that because it had only
received $24,236.72 and did not receive any excess funds, it should not be required to refund
$31,000 to the State. The trial court denied the motion for new trial and Sunbelt timely filed its
notice of appeal.

RETURN OF EXCESS AWARD


 By two issues for review, Sunbelt challenges the trial court's judgment requiring it to refund
the excess and faults the State for naming the mortgagees as defendants in the petition for
condemnation. It also asserts that the State should have objected to the disbursement of any monies
to the mortgagees.

Proper Parties to Condemnation Proceeding


 We will first address Sunbelt's contention that Malooly and Hampton were not proper parties
to the condemnation proceeding because they are not owners of the property. Section 21.012 of the
Texas Property Code provides that a condemnation petition must state the name of the owner of the
property if the owner is known. Tex.Prop.Code Ann. § 21.012(b)(3)(Vernon 1984). A mortgagee
is not an owner of the property as that term is used Section 21.012(b)(3). State v. First Interstate
Bank of Texas, N.A., 880 S.W.2d 427, 429-30 (Tex.App.--Austin 1994, writ denied). A mortgagee
has no proprietary interest, such as the right to dispose of the property, and no right of possession
unless and until he acquires them by foreclosure of his lien. Id. at 429. However, a lienholder's
interest is entirely unaffected by the final judgment in a condemnation suit if he is not a party, and
his lien survives as an encumbrance against the property and an impediment to the progress of the
intended improvement. Id. at 430. Consequently, the lienholder may be treated as a "property
owner" so as to permit a single suit "because only when every interest of every character in the land
is acquired can the property be devoted fully and without restraint or interference to the public
purpose." Id., quoting Houston North Shore Ry. Co. v. Tyrrell, 128 Tex. 248, 98 S.W.2d 786, 793
(1936). Even though the mortgagees are not "property owners" within the meaning of Section
21.012(b)(3), they are properly joined in this condemnation proceeding. Sunbelt's first argument
is without merit.

State's Alleged Failure to Protect Deposited Funds


 Sunbelt next complains that the State failed to protect the funds it deposited into the registry
of the court. Section 21.021 provides, in relevant part, that after the special commissioners have
made an award, a condemnor may take possession of the condemned property pending the results
of further litigation if the condemnor:

 (1) pays to the property owner the amount of damages and costs awarded by the
special commissioners or deposits that amount of money with the court subject to the
order of the property owner. [Emphasis added].


Tex.Prop.Code Ann. § 21.021(a)(1).

 Consistent with the second option, the State deposited the funds into the registry. Sunbelt
subsequently filed a motion to disburse the funds to itself and the mortgagees. At the hearing, the
following discussion occurred between the trial court and Sunbelt's attorney:

 [The Court]: All right. So what else have we got on these proceeds?

 [Sunbelt's Counsel]: Your Honor, the mortgagees, I believe, and the owner of the
fee simple title agree on the amounts that need to be disbursed, and we are prepared
to fill them in on the judgment [sic] and present it to you. I have an order that I
would like to show the Court. The order provides that the proceeds will be paid to
Sunbelt, to Betty Hampton, and to Raymond Malooly. That's the fee simple title
owner and the two mortgagees.


 [The Court]: All right.

 [Sunbelt's Counsel]: And I would fill that out now and present it to the Court for
signature.

The record reflects that Sunbelt's counsel wrote in the order the specific amounts to be disbursed to
each party and the trial court then signed the order. 

 Sunbelt now argues that the State had an obligation to object to the disbursement of funds
to Hampton and Malooly. We disagree. Section 21.021(a)(1) provides that the funds deposited in
the registry of the court are subject to the order of the property owner. Here, Sunbelt filed a motion
requesting that the funds be disbursed to it and the mortgagees. At the hearing, Sunbelt requested
that the funds be disbursed in a specific manner pursuant to an agreement it reached with the
mortgagees. This is not an irregular or improper disbursement and there is no evidence that the State
should have anticipated that Sunbelt might not be able to pay any excess amount withdrawn from
the court's registry. See First Interstate Bank, 880 S.W.2d at 431 (noting that a condemnor could 
protect itself by objecting to the property owner's withdrawal of the deposit if he fears any irregular
disposition of the money or if he believes the amount deposited will exceed the final damages fixed
by the court coupled with a chance that the property owner might not be able to repay the excess
withdrawn). Thus, the State had no obligation to object to the manner in which Sunbelt disbursed
those funds.

Receipt of Excess Funds


 Section 21.044(b) provides that "if the award paid to or appropriated by the property owner
exceeds the court's final determination of the value of the property, the court shall order the property
owner to return the excess to the condemnor. Tex.Prop.Code Ann. § 21.044(b)(Vernon 2000). 
Focusing exclusively on the amount "paid" to it, Sunbelt maintains that it may not be required to
return any excess funds which it did not actually receive. It cites First Interstate Bank in support of
its position.

 In First Interstate Bank, the State commenced condemnation proceedings against certain
property, naming as "owners" both the fee simple owner (Crossroads) and the bank which held the
mortgage lien. The special commissioners awarded $6,363,000 without making any allocation
between Crossroads and the bank. The State filed an objection to the award and deposited the lump
sum of the award into the registry of the court. Crossroads also objected to the award and filed a
motion, joined by the bank, to withdraw the sum deposited into the registry. Crossroads received
the money and utilized $3,214,788 to pay its debt to the bank while keeping the balance. The bank
released its lien on the property. The trial court then granted the bank's motion for summary
judgment discharging it from any further liability to the State. Crossroads and the State subsequently
reached a settlement agreement which they reduced to an agreed judgment. It stipulated that
Crossroads' damages for the condemnation were $3,534,337. The judgment awarded the State
recovery of the excess award from Crossroads, but it was unable to pay the debt. Consequently, the
State sought recovery of the excess award from the bank. The State appealed the summary judgment
in favor of the bank, asserting that the bank was liable for the return of the excess award pursuant
to Section 21.044 of the Property Code. The Austin Court of Appeals determined that the bank, as
mortgagee, is not an owner of the property for purposes of Section 21.044, and therefore, the State
could not seek recovery of the excess award from the bank. First Interstate Bank, 880 S.W.2d at
430-31. (2) The court noted that a condemnor could protect itself against the risk by not requiring
possession in advance of a final judgment or by objecting to the property owner's withdrawal of the
deposit if he fears any irregular disposition of the money or if he believes the final damages fixed
by the court will be less than the amount deposited, coupled with a chance that the property owner
might not be able to repay the excess withdrawn. Id. at 431. Rather than supporting Sunbelt's
position, we believe First Interstate Bank undercuts the argument that the State is limited to seeking
recovery of the excess award from the mortgagees.

 We also disagree with Sunbelt's argument that it did not receive the excess award. As
pointed out by the State, Sunbelt may have only been directly paid $24,236.72 of the award, but it
received the benefit of the entire award since it discharged Sunbelt's mortgage debt and extinguished
the interest of the mortgagees in the property. (3) The payment of the mortgage certainly benefitted
Sunbelt. Thus, we find that Sunbelt "appropriated" the entire award and is responsible under Section
21.044(b) for repayment of the excess to the State. Issues One and Two are overruled. Having
overruled both issues, we affirm the judgment of the trial court.


March 6, 2003 

 ANN CRAWFORD McCLURE, Justice


Before Panel No. 1

Larsen, McClure, and Chew, JJ.

1. The petition also named various tenants of the shopping center. 
2. The court acknowledged that the State might be able to seek recovery from the mortgagee under an equitable
theory. First Interstate Bank, 880 S.W.2d at 431. Assuming this is true, the existence of an equitable action against the
mortgagees does not benefit Sunbelt because its statutory obligation to repay the excess award is not extinguished.
3. Paragraph 6.07 of the deed of trust required Sunbelt to pay any proceeds arising out of a condemnation
proceeding to the mortgagee Hampton.